**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4145-17T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

FROYLAN LOPEZ,

     Defendant-Appellant.

_____

> Argued June 25, 2019 – Decided August 12, 2019
>
> Before Judges Rothstadt and Suter.
>
> On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 16-06-0882.
>
> Susan Lee Romeo, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Susan Lee Romeo, of counsel and on the brief).
>
> Alanna M. Jereb, Assistant Prosecutor, argued the cause for respondent (Esther Suarez, Hudson County Prosecutor, attorney; Alanna M. Jereb, on the brief).
>
> Appellant filed a pro se supplemental brief.

PER CURIAM

Defendant Froylan Lopez appeals from the Law Division's March 26, 2018 judgment of conviction that the trial judge entered after a jury found defendant guilty of first-degree murder, N.J.S.A. 2C:11-3(a)(1), N.J.S.A. 2C:11-3(a)(2); third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d); and fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d). Defendant also appeals from his sentence to an aggregate forty-year term of imprisonment subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. On appeal, defendant does not challenge the jury's finding that he fatally stabbed his victim, Troy Brandon. His contentions are that it was plain error for the trial judge to fail to instruct the jury sua sponte on the lesser-included offense of passion/provocation manslaughter, to allow the admission of inadmissible evidence and testimony, and that his sentence was excessive. For the reasons that follow, we affirm.

I.

The evidence adduced at trial by the State upon which the jury relied consisted of testimony from law enforcement officers and witnesses who were present the night of the fatal assault, and from video recordings from the victim's

cell phone and area video surveillance cameras. The facts established by that evidence is summarized as follows.

On December 5, 2015, at approximately 10:18 p.m., Miguel Enriques, while sitting in his parked car, engaged in an argument with an unknown man and woman on the sidewalk. The man approached the car and argued with Enriques before leaving the scene and walking up the street with the woman. Enriques exited his vehicle, opened the trunk of the car, and reached inside. The unknown man began walking back down the street and Enriques continued arguing with him from his location. The man walked back over to Enriques and punched him in the head, causing him to fall.

After Enriques fell down and the man and woman walked away, Brandon approached Enriques, turned and walked up the street to his apartment, and then returned while on his cell phone to check on Enriques. After unsuccessfully trying to get the attention of a passing police car, Brandon went back in the direction of his building, paced outside, and finally went inside.

Defendant appeared on the scene at about 10:25:18 p.m. It was undisputed that from the time defendant appeared until Brandon was fatally stabbed, only approximately ninety-four seconds transpired. Upon his arrival, defendant spoke to somebody in an upstairs apartment in one of the buildings while

A-4145-17T4

gesturing up the street and looking at Enriques.  He then ran across the street and about twenty seconds later, ran back in the direction of Brandon's apartment. He entered a building and reemerged, running back to Enriques.  Brandon came out from his building and defendant began walking over to him.  While Brandon was speaking to defendant,[1] Enriques stood up and remained by his car. Defendant then lunged toward Brandon and appeared to strike him in the chest. Both men ran back towards Enriques with Brandon running out of view, clutching his left arm-pit and defendant going around the driver-side of Enriques' car at 10:26:53 p.m.

Defendant was arrested on December 6, 2015.  He was later charged in an indictment with the murder and weapons charges that the jury found him guilty of committing.  At the ensuing trial, the State's witnesses testified about their observations and involvement in the matter leading up to defendant's arrest and indictment.  Also during the trial, the State played several video recordings from the scene that night and a recording of defendant's interview by police after he was apprehended, in which he admitted being at the scene that night, and having a knife, but denying that he did anything to Brandon.  Defendant did not testify

---

[1] Defendant's native language is Spanish and he speaks and understands limited English.  Brandon was speaking to defendant in English.

but called a witness who testified about one video taken by Brandon that depicted the fight between Enriques and the unknown man.

After the jury deliberated, it unanimously found defendant guilty on all counts. The trial judge later sentenced defendant and this appeal followed.

On appeal, defendant presents the following issues for our consideration:

POINT I

THE COURT'S FAILURE TO INSTRUCT THE JURY SUA SPONTE ON THE LESSER-INCLUDED OFFENSE OF PASSION/PROVOCATION MANSLAUGHTER WAS PLAIN ERROR AND VIOLATED DEFENDANT'S RIGHT TO A FAIR TRIAL, BECAUSE THE RECORD PRESENTED OVERWHELMING EVIDENCE OF LEGALLY SUFFICIENT PROVOCATION AND THE ABSENCE OF ANY COOLING-OFF PERIOD BEFORE THE STABBING (U.S. CONST. AMENDS. V AND XIV) (NOT RAISED BELOW).

POINT II

DEFENDANT'S SENTENCE IS EXCESSIVE.

Defendant filed a pro se supplemental brief in which he presents the following additional arguments:

POINT I

THE TRIAL COURT ERRED WHEN IT ALLOWED INTO EVIDENCE, AN ALLEGED STATEMENT MADE BY AN UNKNOWN WITNESS TO THE STATE'S WITNESS NATASHA TORRES,

5

CONSTITUTING DOUBLE HEARSAY, AND DOES NOT FALL WITHIN ANY EXCEPTION.

POINT II

THE TRIAL COURT ERRED WHEN IT ALLOWED THE 9-11 CALL, WHICH IS NOT TESTIMONIAL, AND DOES NOT FALL WITHIN AN EXCEPTION TO N.J.R.E. 802.

POINT III

THE STATEMENT MADE BY MS. TORRES REPEATING WHAT THE UNKNOWN WITNESS SAID CANNOT BE ADMITTED BECAUSE IT DOES NOT FALL UNDER THE PRESENT SENSE IMPRESSION EXCEPTION TO THE HEARSAY RULE.

POINT IV

THE TRIAL COURT ERRED WHEN IT ALLOWED DETECTIVE MIRAGLIOTTA TO VIEW A VIDEO IN FRONT OF THE JUROR'S AND TO DRAW CONCLUSIONS AS TO THE DEFENDANT'S ACTIONS.

## II.

We first address defendant's argument that the trial judge committed plain error by failing to charge passion/provocation manslaughter as a lesser-included offense of murder. He maintains that "mere seconds" passed between seeing his friend on the ground and stabbing Brandon, and that the record does not contain any evidence that there was a sufficient cool-down period. For that reason,

6

although he never requested the charge, defendant contends the trial court was obligated to charge the jury with the lesser-included offense. We disagree.

"When a defendant fails to object to an error or omission [about a jury charge] at trial, we review for plain error. Under that standard, we disregard any alleged error 'unless it is of such a nature as to have been clearly capable of producing an unjust result.'" State v. Funderburg, 225 N.J. 66, 79 (2016) (quoting R. 2:10-2). Reversal is warranted only where an error raises "a reasonable doubt . . . as to whether the error led the jury to a result it otherwise might not have reached." Ibid. (alteration in original) (quoting State v. Jenkins, 178 N.J. 347, 361, (2004)). "The mere possibility of an unjust result is not enough." Ibid.

In its jury charges, a "trial court must give 'a comprehensible explanation of the questions that the jury must determine, including the law of the case applicable to the facts that the jury may find.'" State v. Baum, 224 N.J. 147, 159 (2016) (quoting State v. Green, 86 N.J. 281, 287-88 (1981)). Accordingly, "the court has an 'independent duty . . . to ensure that the jurors receive accurate instructions on the law as it pertains to the facts and issues of each case, irrespective of the particular language suggested by either party.'" Ibid. (alteration in original) (quoting State v. Reddish, 181 N.J. 553, 613 (2004)).

"[I]f parties do not request a lesser-included-offense charge, reviewing courts 'apply a higher standard, requiring the unrequested charge to be 'clearly indicated' from the record.'" State v. Fowler, ___ N.J. ___, ___ (2019) (slip op. at 22) (quoting State v. Alexander, 233 N.J. 132, 143 (2018)). See also State v. Denofa, 187 N.J. 24, 42 (2006); N.J.S.A. 2C:1-8(e). As such,

> [t]he "clearly indicated" standard does not require trial courts either to "scour the statutes to determine if there are some uncharged offenses of which the defendant may be guilty," . . . or "'to meticulously sift through the entire record . . . to see if some combination of facts and inferences might rationally sustain' a lesser charge,". . . . Instead, the evidence supporting a lesser-included charge must "jump[ ] off the page" to trigger a trial court's duty to sua sponte instruct a jury on that charge.
>
> [Alexander, 233 N.J. at 143 (third and fifth alterations in original) (citations omitted).]

Passion/provocation manslaughter is a "well-established lesser-included offense of murder." State v. Carrero, 229 N.J. 118, 129 (2017). Under N.J.S.A. 2C:11-4(b)(2), a criminal homicide may be considered manslaughter when "[a] homicide which would otherwise be murder . . . is committed in the heat of passion resulting from a reasonable provocation." "Passion/provocation manslaughter is an intentional homicide committed under extenuating circumstances that mitigate the murder." State v. Robinson, 136 N.J. 476, 481

8

(1994). It "contains all the elements of murder except that the presence of reasonable provocation, coupled with defendant's impassioned actions, establish a lesser culpability." Id. at 482; see N.J.S.A. 2C:1-8(d)(3).

Four elements must be met for passion/provocation manslaughter: (1) there must be adequate provocation; (2) "the defendant must not have had time to cool off between the provocation and the slaying"; (3) the defendant must have been actually impassioned by the provocation; and (4) "the defendant must not have actually cooled off before the slaying." Funderburg, 225 N.J. at 80 (quoting State v. Mauricio, 117 N.J. 402, 411 (1990)).

The first two elements are objective while the other two are subjective. Carrero, 229 N.J. at 129. Accordingly, a court should decide whether there is sufficient evidence of the first two elements. Ibid. "To warrant the passion/provocation jury charge, the evidence must rationally support only the first two elements; the subjective elements 'should usually be left to the jury to determine.'" Ibid. (quoting Mauricio, 117 N.J. at 413).

The element of adequate provocation is measured by whether "'loss of self-control is a reasonable reaction.'" State v. Foglia, 415 N.J. Super. 106, 126 (App. Div. 2010) (quoting Mauricio, 117 N.J. at 412). With regard to the first element, "the provocation must be 'sufficient to arouse the passions of an

ordinary [person] beyond the power of his [or her] control.'" Carrero, 229 N.J. at 129 (alterations in original) (quoting Mauricio, 117 N.J. at 412). "The generally accepted rule is that words alone, no matter how offensive or insulting, do not constitute adequate provocation to reduce murder to manslaughter." Funderburg, 225 N.J. at 80 (quoting State v. Crisantos, 102 N.J. 265, 274 (1986)). "Battery is . . . considered adequate provocation 'almost as a matter of law'" and the element may also be satisfied by "the presence of a gun or knife." Carrero, 229 N.J. at 129 (quoting Mauricio, 117 N.J. at 414).

Regarding the cool-off period, "it is well-nigh impossible to set specific guidelines in temporal terms." Ibid. (quoting Mauricio, 117 N.J. at 413). Therefore, "[t]rial courts are . . . remitted to the sense of the situation as disclosed by the facts." Mauricio, 117 N.J. at 413.

In support of his argument, defendant cites to State v. Coyle, 119 N.J. 194, 226 (1990) for the proposition that a third person may be sufficiently provoked "when a close friend suffers injury or abuse under circumstances that would constitute adequate provocation had the third person been the object of the abuse." In Coyle, the defendant shot and killed the abusive husband of a woman with whom he was having an affair. 119 N.J. at 204. The shooting occurred after the husband locked the woman out of the house, defendant, who owned a

gun and had taken mescaline earlier in the evening, demanded that the woman be allowed to return, and a chase ensued. Id. at 203-04. The trial judge did not instruct the jury on the State's burden of proving passion/provocation beyond a reasonable doubt in the context of murder, but instead did so when giving the manslaughter charge. Id. at 222. The defendant argued that the murder charge was deficient in failing to address passion/provocation evidence and that the State could only prove murder if it proved the absence of adequate provocation. Id. at 221. The State argued for the first time on appeal that there was no harm to the defendant as there was insufficient evidence of passion/provocation and that the charge should not have been given. The Supreme Court did not agree. Id. at 224. It stated that

> [t]he jury could have rationally concluded that defendant and [the victim] had engaged in a heated confrontation, which led to the firing of a warning shot; that [the victim] had obstructed the couple's escape and had chased his wife down the street; and that in an effort to protect [her], defendant had pursued [the victim] and had fired randomly at him. Although that evidence might not conclusively establish the existence of passion/provocation, it does leave "room for dispute."
>
> [Ibid. (quoting Mauricio, 117 N.J. at 415).]

We do not find that Coyle supports defendant's position. Here, Enriques was already injured by the time defendant arrived. Defendant did not witness

the assault, was not protecting Enriques from being harmed, and spoke to him before searching for Brandon. This is not the type of provocation described in Coyle.

Defendant also attempts to analogize the facts of Mauricio to his case. In Mauricio, the defendant killed the victim in a case of mistaken identity. 117 N.J. at 409. The defendant entered a bar in the early hours of the morning and the bouncer did not permit him access. Id. at 405-06. The bouncer grabbed the defendant's arms and forcefully escorted him out of the establishment. Id. at 406. Defendant returned and the bouncer again told him to leave but he ignored the request, prompting the bouncer to open the door and pin him against the outside wall. Id. at 406-07. The victim, who was also in the bar, left after defendant was thrown out the second time and the two men became subsequently engaged in a conversation on the street. Id. at 408. Defendant was later seen fatally shooting the victim and laughing. Id. at 408-09.

At trial, the State theorized that defendant killed the victim because he believed him to be the bouncer. Id. at 409. Relying on that theory, the defendant requested a manslaughter charge on the basis of killing the victim in the heat of passion due to his mistaken identity, but the trial court denied the request. Ibid. We affirmed the court's refusal, finding that the defendant's forceful removal

12

from the bar amounted to inadequate provocation. Id. at 409-10. The Supreme Court disagreed and stated that it was "satisfied that the evidence was susceptible of different interpretations and that [the] defendant's view of the case would have permitted a jury rationally to conclude that a reasonable person might, under the circumstances, have reasonably been provoked to the point of loss of control." Id. at 415.

As with Coyle, we find defendant's reliance upon Mauricio to be inapposite. While defendant may have mistaken Brandon's identity for that of the unknown man who assaulted his friend, unlike the defendant in Mauricio, he was not reacting to any actual or threatened harm to himself, nor to his witnessing any to Enriques.

We instead find the lack of provocation in Funderburg to be more similar to the case before us. There, the defendant was charged with attempted murder of his ex-partner's new boyfriend during a physical altercation in which he stabbed the boyfriend. Funderburg, 225 N.J. at 69-70. Leading up to the stabbing, a chase ensued between the defendant and the boyfriend. Id. at 72-73. At trial, neither party requested the passion/provocation attempted manslaughter charge to be included as a lesser offense to attempted murder. Id. at 75. On appeal, we reversed and remanded for failure to deliver the instruction. Ibid.

The Supreme Court reversed, finding insufficient evidence of adequate provocation. Id. at 82. It noted that "the facts . . . did not clearly indicate that the objective elements of attempted passion/provocation manslaughter were present." Ibid. It found that the altercation was not threatening, despite a chase and "verbal sparring" and noted that there was insufficient evidence of whether the boyfriend had a weapon. Ibid. As such, it did not find the failure to sua sponte provide the instruction to be in error. Id. at 83-84.

Here, while the record reflects that defendant and Enriques were friends, defendant neither saw the initial altercation nor was provoked during his interaction with Brandon. He saw his friend on the ground, spoke to him, and then ran across the street and back again in attempt to find the alleged perpetrator. When Brandon came out from his apartment, he was talking to defendant and did not brandish a weapon or attack him in any way. As the trial judge observed, Brandon "posed no threat . . . . [and] it certainly appears he was trying to rationalize with [defendant], but [defendant] wouldn't have it." There also was adequate time for defendant to cool off, given his actions between initially seeing Enriques, including speaking to an occupant of one of the buildings, running across the street, and returning to look for Brandon, who did not immediately appear. As the record does not "clearly indicate" that there was

14

adequate provocation, or that defendant if adequately provoked could not have cooled-down, despite the short amount of time, defendant could not have been "actually impassioned" by observing and talking to Enriques.

For these reasons, we conclude that the trial judge did not commit plain error by not charging the jury, as there was no evidence that jumped off the page that required the trial judge to sua sponte instruct the jury on passion/provocation.

## III.

We next turn to the arguments raised in defendant's supplemental brief, beginning first with his contentions in Points I through Point III about a tape recording of a 911 call being improperly admitted into evidence. We find his contention to be without any merit because the trial judge agreed with his argument that the recording contained what amounted to be double hearsay, and therefore did not allow the tape to be played to the jury or admitted into evidence, even though it had been marked for identification.

We next address defendant's argument in Point IV that the trial court erred in allowing Detective Peter Miragliotta of the Hudson County Prosecutor's Office to testify about his opinions and conclusions about defendant's actions as

15

the jury viewed a video tape of the events. Here again the record of what transpired at trial does not support defendant's contention.

At trial, while the prosecutor was conducting his direct examination of the detective, the detective indicated that defendant was identified as a suspect from the videos and interviews with witnesses. The prosecutor also asked how defendant's appearance changed from the night of his arrest. Defendant objected and requested two sidebar conferences that resulted in the trial judge overruling the objections, but directing the prosecutor to rephrase his question. The detective explained that defendant had long hair on the night of his arrest, which had since been cut short.

Before playing one of the videos for the jury, the prosecutor requested a sidebar conference seeking to "introduce lay witness testimony . . . as to . . . what [wa]s taking place in the video based on [the detective's] opinion" and experience as a police officer. He noted that the jury would review the video and either accept or reject the detective's interpretation. Defendant contended that it would be improper for the witness to opine about the video as he lacked personal knowledge since he was not there and that a jury could make its own observations from viewing the video. The prosecutor indicated that he would

not attempt to have the detective testify that defendant was the individual who stabbed Brandon.

The following day, before the jury entered, the prosecutor reiterated that he would not seek testimony from the detective identifying defendant or narrating what was occurring in the video. When the detective was recalled, he did not testify while the videos played for the jury. His testimony consisted of explaining from where he obtained the videos, the location that was caught on video, and that the timestamps were fast. He also noted that his unit was able to identify and interview witnesses from the surveillance footage, including Enriques.

Therefore, contrary to defendant's argument on appeal, the prosecutor did not play the videos while the detective testified so he never gave his opinion about what was being depicted on them. Notably, to the extent defendant found any portion of the detective's testimony to still be improper, he failed to interpose additional objections or seek curative instructions. Applying our plain error standard to our review of the testimony, we discern none, especially in light of the other overwhelming evidence of defendant's guilt.

To the extent we have not specifically addressed any remaining arguments raised by defendant in his supplemental brief, we find them to be without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

IV.

Finally, we address defendant's contentions that his sentence is excessive. At sentencing, the trial judge did not find any mitigating factors but found aggravating factor two, N.J.S.A. 2C:44-1(a)(2), the gravity and seriousness of harm inflicted on Brandon, and factor nine, N.J.S.A. 2C:44-1(a)(9), the need to deter defendant and others from violating the law. He then merged the weapons charges with the murder charge and imposed a forty-year term of imprisonment subject to NERA.

On appeal, defendant argues that the judge imposed a sentence substantially greater than the thirty-year minimum and focused on events that had no bearing on his culpability. He adds that the judge improperly characterized his search for Brandon as a "hunt" and relied on the visual of Brandon attempting to flag down the police car, which occurred before defendant arrived. Defendant also emphasizes that the stabbing was not premeditated. We find no merit to these contentions.

Our "review of the length of a sentence is limited." State v. Miller, 205 N.J. 109, 127 (2011). We will not substitute our judgment for those of "our sentencing courts." State v. Case, 220 N.J. 49, 65 (2014).

We are required to affirm a sentence unless

> (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience."
>
> [State v. Fuentes, 217 N.J. 57, 70 (2014) (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).]

The record demonstrates that the judge did not violate the sentencing guidelines, sentenced defendant in accordance with N.J.S.A. 2C:11-3(b)(1), and his finding of aggravating factors two and nine was fully supported by competent evidence in the record, as was his finding that no mitigating factors were present despite defendant's request at sentencing for application of factor seven. Finally, defendant's sentence does not shock our conscience.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4145-17T4