**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4605-19

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

APOLLO H. CARDENAS,

    Defendant-Appellant.

_____

Submitted April 4, 2022 – Decided June 20, 2022

Before Judges Messano and Enright.

On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Indictment No. 97-05-0401.

Joseph E. Krakora, Public Defender, attorney for appellant (Monique Moyse, Designated Counsel, on the brief).

Scott A. Coffina, Burlington County Prosecutor, attorney for respondent (Nicole Handy, Assistant Prosecutor, of counsel and on the brief).

Appellant filed a supplemental pro se brief.

PER CURIAM

Defendant Apollo H. Cardenas appeals from the denial of his petition for post-conviction relief (PCR) following a limited evidentiary hearing. Defendant asserts trial counsel was ineffective for failing to call an expert witness to support defendant's passion/provocation manslaughter defense at trial and for failing to correct the judge's instructions in response to a jury question, and appellate counsel provided ineffective assistance by failing to raise this latter issue on direct appeal. In a supplemental pro se brief, defendant reiterates that trial counsel was ineffective for failing to call an expert witness to support his defense, and he also claims PCR counsel was ineffective for failing to call an expert witness at the evidentiary hearing. We affirm.

## I.

A jury convicted defendant of the first-degree murder of his wife, Youngsook Lee, and possession of a weapon for an unlawful purpose. State v. Cardenas, No. A-1397-14 (App. Div. June 29, 2016) (slip op. at 1). The judge sentenced defendant to life imprisonment, with a thirty-year period of parole ineligibility. Id. at 2.

The evidence adduced at trial demonstrated in late November 1996, defendant killed Lee with an ax and left her body on a mattress on the living room floor of the Maple Shade apartment they shared. It was discovered weeks later, in January 1997, by the maintenance manager. Id. at 3–4. Police

obtained a statement from defendant's sister who lived in New York; she acknowledged defendant admitted killing Lee, "explaining, 'he thought that [Lee] was getting ready to leave.'" Id. at 5. On December 3, 1996, defendant fled to Ecuador using his brother's passport. Ibid. Defendant was not arrested until 2013 when he flew back into the United States in Miami. Id. at 6.

We quote from our prior opinion what was the substance of defendant's testimony at trial.[1]

> [Defendant] claimed that Lee would fly into rages over insignificant things, and the couple frequently separated during the marriage only to reunite. On the night of the homicide, defendant picked up Lee from the restaurant and grew suspicious based upon her demeanor. Later, in the apartment, he concluded she was having an affair with one of the waiters and resolved to leave her. Defendant testified that sometime during the night, he was awakened when Lee called out the name "Kim" in her sleep.
>
> Defendant rose from the bed to leave, waking Lee. She began to scream, so he grabbed the axe to intimidate her but admitted he lost control when she "started yelling louder and louder." Defendant explained:
>
> > I was so angry, so upset about everything and I just became like an animal afterwards and a hard rage came over me like [] never happened to me in my whole life and I los[t] control of myself. So I just lose control and so my first [intent] was to stop her and then something happened, something

---

[1] Defendant called no other witnesses at trial.

3

> snapped and I just went, I went to hit her
> . . . I didn't care anymore. I los[t] hope
> and everything, I wanted everything to
> end.
>
> [Id. at 6–7 (second and fourth alterations in
> original).]

Trial counsel urged the jury to accept that defendant killed Lee in the heat of passion after a reasonable provocation. The judge gave the model jury charge for passion/provocation manslaughter without objection. During deliberations, the jury sent a note containing three questions: "Question one, define physical confrontation. Question two, it must be physical only . . . ? Question three, might actions of a victim to a defendant be considered adequate provocation?" The court re-read the model jury charge but otherwise did not elaborate. As noted, the jury convicted defendant of murder.

Defendant filed a timely PCR petition. Through PCR counsel, he argued trial counsel was ineffective for failing to produce "an expert on the issue of whether defendant was 'actually impassioned' by the events preceding the killing.'" Defendant offered the report of Dr. Gerald Cooke, a licensed clinical psychologist, who evaluated defendant in December 2017. In essence, Dr. Cooke opined that defendant suffered from various diagnosable mental conditions for an extended period of time and, at the time of the murder, "his actions involved a loss of emotional control and impulsive

acting out in response to . . . cumulative provocation." Cooke opined defendant met "the [p]assion/[p]rovocation criteria." In a reply brief, PCR counsel also added that defendant claimed trial counsel was ineffective for "not requesting . . . a tailored charge to explain the concept of provocation within the specific context of this case."

After considering each parties' submissions and arguments, the PCR judge, who was also the trial judge, ordered a limited evidentiary hearing to consider trial counsel's failure to call an expert to support defendant's passion/provocation defense.

Defendant's trial counsel testified that defendant told her he had never been treated for mental illness nor received any medication for such a condition until after the murder. Without a history or documentation of prior mental health concerns, counsel did not believe the circumstances supported retaining an expert. Trial counsel admitted she was aware that continued ill-treatment by a decedent against a defendant could constitute adequate provocation. She was also aware of defendant's allegations that he suffered a course of ill-treatment from his wife.

In his written decision following the hearing, the PCR judge concluded Dr. Cooke's evaluation was based on defendant's "self-serving" information, which was "inconsistent with the information [defendant] provided to trial counsel." The information "also contradicted [defendant's] testimony during

trial." The judge also found Cooke's opinions were "net opinions . . . formed over a decade after the killing, [without] direct correlation to [d]efendant's actions and thoughts on the night he murdered his wife." Further, the judge concluded even if defendant called an expert at trial, it would not have mattered, given the overwhelming evidence of defendant's guilt, including defendant's admission to purchasing the murder weapon and his flight.

The judge also found his instructions in response to the jury's questions were proper. He noted trial counsel in fact "request[ed] the [c]ourt to provide a different response," but he "properly declined the request." The judge also concluded appellate counsel was not ineffective for failing to raise the issue on appeal. He entered an order denying defendant's PCR petition, and this appeal followed.

## II.

We defer to a "PCR court's factual findings, given its opportunity to hear live witness testimony, and '[an appellate court] will uphold the PCR court's findings that are supported by sufficient credible evidence in the record.'" State v. Gideon, 244 N.J. 538, 551 (2021) (quoting State v. Nash, 212 N.J. 518, 540 (2013)). However, an appellate court "need not defer to a PCR court's interpretation of the law; a legal conclusion is reviewed de novo." Nash, 212 N.J. at 540–41 (citing State v. Harris, 181 N.J. 391, 415–16 (2004)).

6

To establish a claim of ineffective assistance of counsel (IAC), a defendant must meet the two-prong test set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984), and recognized by our Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987). A defendant must first show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Fritz, 105 N.J. at 52 (quoting Strickland, 466 U.S. at 687).

As to this prong, "there is 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[,]' [and t]o rebut that strong presumption, a defendant must establish that trial counsel's actions did not equate to 'sound trial strategy.'" State v. Castagna, 187 N.J. 293, 314 (2006) (quoting Strickland, 466 U.S. at 689). "In some cases, whether counsel's conduct is reasonable 'may be determined or substantially influenced by the defendant's own statements or actions.'" State v. Martini, 160 N.J. 248, 266 (1999) (quoting Strickland, 466 U.S. at 691). "[W]hen a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." Strickland, 466 U.S. at 691.

Additionally, a defendant must prove he suffered prejudice due to counsel's deficient performance. Id. at 687. A defendant must show by a

7

"reasonable probability" that the deficient performance affected the outcome. Fritz, 105 N.J. at 58. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." State v. Pierre, 223 N.J. 560, 583 (2015) (quoting Strickland, 466 U.S. at 694; Fritz, 105 N.J. at 52).

Here, the PCR judge implicitly found trial counsel's testimony credible, because he concluded defendant never provided trial counsel with any information regarding his mental health history, and never suggested any treatment occurred, or medication was prescribed, prior to the murder. We defer to that factual finding by the PCR judge. Trial counsel sought to mitigate defendant's purposeful killing of his wife to passion/provocation manslaughter. Defendant's testimony provided the framework for the defense, which the jury rejected given the substantial evidence adduced by the State. In the absence of any information from defendant indicating he suffered from a mental illness or had received treatment for such a condition before the homicide, trial counsel did not render deficient assistance by failing to retain a mental health expert. Defendant's IAC claim regarding the failure to call an expert at trial to support the defense was properly rejected.[2]

---

[2] To the extent defendant contends in his pro se brief that PCR counsel was deficient because she failed to produce Dr. Cooke as a witness at the evidentiary hearing, the argument lacks sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Defendant also claims trial and appellate counsel were ineffective because the judge's response to the jury's questions was inadequate under the circumstances of the case.[3] Passion/provocation manslaughter is defined as "[a] homicide which would otherwise be murder . . . [but] is committed in the heat of passion resulting from a reasonable provocation." N.J.S.A. 2C:11-4(b)(2). To reduce murder to passion/provocation manslaughter, the following elements must be met: "[1] the provocation must be adequate; [2] the defendant must not have had time to cool off between the provocation and the slaying; [3] the provocation must have actually impassioned the defendant; and [4] the defendant must not have actually cooled off before the slaying." State v. Carrero, 229 N.J. 118, 129 (2017) (quoting State v. Mauricio, 117 N.J. 402, 411 (1990)). The jury's questions clearly focused on the first element, i.e., whether defendant was adequately provoked.

The judge's charge was consistent with the model jury instructions. See Model Jury Charges (Criminal), "Murder, Passion/Provocation and Aggravated/Reckless Manslaughter (N.J.S.A. 2C:11-3(a)(1) and (2); 2C:11-4(a), (b)(1) and (b)(2))" (rev. June 8, 2015). However, there is a footnote in the model charge that directs: "Where applicable, the jury must be instructed

_____

[3] We apply the same Strickland/Fritz test to claims that appellate counsel provided ineffective assistance. State v. Morrison, 215 N.J. Super. 540, 548–49 (App. Div. 1987).

that a continuing course of ill treatment by the decedent against the defendant or a third person 'with whom the defendant stands in close relationship'[] can constitute adequate provocation." Ibid. (quoting State v. Coyle, 119 N.J. 194, 225–28 (1990) (citing State v. Kelly, 97 N.J. 178 (1984), and State v. Guido, 40 N.J. 191 (1963))). The footnote recognizes

> that when there is evidence of prior physical abuse of defendant by the decedent, the jury must be told that a finding of provocation may be premised on "a course of ill treatment which can induce a homicidal response in a person of ordinary firmness and which the accused reasonably believes is likely to continue."
>
> [Kelly, 97 N.J. at 218–19 (emphasis added) (quoting Guido, 40 N.J. at 211).]

Initially, trial counsel did not render deficient performance on this issue. Although she did not urge the judge to respond to the jury's questions by providing the model charge's footnote, counsel did argue that the judge should provide more detail in explaining what could be a reasonable provocation. The judge refused and decided to reread the model jury charge without more.

The issue, then, is whether appellate counsel rendered deficient performance by not raising on direct appeal this alleged shortcoming in the judge's response to the jury's questions. In our prior opinion, however, we tangentially addressed the issue in the context of defendant's claim that the

10

judge's decision to exclude certain evidence of his wife's infidelities denied him the ability to present a complete passion/provocation defense. Cardenas, slip op. at 14–15. We found no error, observing, "in this case, there was no evidence of physical abuse." Id. at 15. We also noted "that words alone, no matter how offensive or insulting, do not constitute adequate provocation to reduce murder to manslaughter." Id. at 15–16 (quoting State v. Funderburg, 225 N.J. 66, 80 (2016)).

The facts here are unlike those in Kelly or Guido, and more like those presented in State v. McClain, 248 N.J. Super. 409, 416 (App. Div. 1991). There, the female defendant "had a long-term intimate relationship with the victim," who repeatedly had affairs with other women and assaulted the defendant on two occasions years earlier. Id. at 413. In the week leading up to the murder, however, the victim did not assault the defendant or threaten her and appeared "detached." Id. at 413–14. On the day of the murder, the victim ignored the defendant while both were together in a bar, and later told the defendant "he was his own man and would do whatever he wanted to do and . . . never intended to marry her or anyone." Id. at 414. We concluded that the facts failed to support any claim that the defendant was reasonably provoked by the victim's ill treatment, distinguishing Guido and Kelly, which involved "physical threats or use of force" that "were closely related in time to [the] defendant's action." Id. at 419.

In the present case, defendant did testify that his marriage was less than perfect, tainted with affairs and verbal, sometimes even physical, skirmishes. However, defendant did not testify when the instances of alleged physical abuse occurred, aside from the night before Lee's murder, where Lee hit him in the head with a video tape. Nor did he testify that he feared Lee would harm him based on that past treatment. Further, defendant claimed at trial he grabbed the axe because Lee was screaming at him and he wanted to "shut her up," not because he was fearful of Lee.

Any alleged "continued course of ill-treatment" by Lee was insufficient to justify the Coyle instruction. There being no reversible error in the judge failing to provide the instruction in response to the jury's questions, it follows that "the failure of appellate counsel to raise that issue on appeal could not lead to the conclusion that there is a reasonable probability that, but for the errors of . . . appellate counsel, the outcome would have been different." State v. Echols, 199 N.J. 344, 361 (2009).

To the extent we have not addressed specific issues raised in defendant's pro se supplemental brief, they lacked sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

12