**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3952-18

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

CARLOS ORTIZ,

     Defendant-Appellant.

_____

Submitted January 12, 2021 – Decided February 26, 2021

Before Judges Haas, Mawla, and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Indictment No. 17-08-0438.

Joseph E. Krakora, Public Defender, attorney for appellant (Michael Denny, Assistant Deputy Public Defender, of counsel and on the brief).

Angelo J. Onofri, Mercer County Prosecutor, attorney for respondent (Elizabeth M. Newton, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Carlos Ortiz appeals from a judgment of conviction entered after a jury found him guilty of murder, assault, theft, and related weapons offenses.

On appeal, defendant does not challenge the jury's finding that he fatally strangled the victim, Rufina Castro, his former girlfriend. His contentions are that the trial judge committed plain error when he failed to: 1) instruct the jury, sua sponte, on the lesser-included offense of passion/provocation manslaughter; 2) incorporate the self-defense jury charge into each individual count; and 3) preclude the admission of testimony in which Castro's son and daughter identified defendant as her killer. He also asserts that his sentence to a term of life imprisonment subject to an approximately sixty-four-year period of parole ineligibility under the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, was excessive. For the reasons that follow, we affirm in part, reverse defendant's murder conviction, and remand for proceedings consistent with this opinion.

I.

The evidence adduced at trial, upon which the jury relied, consisted of testimony from law enforcement officers, forensic experts, the victim's children, and defendant. The facts established by that evidence are summarized as follows.

2

Defendant killed Castro on August 16, 2016. Police arrested him the next day, and during an interview conducted in Spanish, which was later translated, defendant stated he lived with Castro and her son for approximately a year. He described Castro as having a drinking problem and acknowledged that he used drugs regularly during their relationship.

Defendant admitted that he killed Castro after an argument and that he "lost [his] mind at that moment." When describing the incident, defendant stated he picked Castro up from work and drank with her at their home. Defendant said they started arguing, which he said, "happened every day." While Castro was putting beer in the refrigerator in their bedroom, she "called [defendant] a motherfucker." Upset, defendant stated he hit Castro on the head with a "big" beer bottle causing it to shatter. Castro then "threw herself against" defendant, they "started to wrestle," and defendant "ended up hanging her" with a cell phone cord. Defendant said Castro grabbed him and "hurt[]" him while they wrestled, so he "had to fight with her, using the [phone] c[]ord until she let go of [him.]" By the time he let go, defendant stated Castro "had already asphyxiated."

Defendant hid Castro's body by covering it with clothes. As he "was covered in blood," defendant changed his clothes. Defendant then left to pick up Castro's son and lied to him that Castro would be working late. Defendant

3

also went to Castro's job and falsely stated to her manager that she would not be coming in to work because she was in the hospital.

Defendant then returned to the home, took approximately $1000 from Castro's purse, and drove to Newark to see his son from a previous relationship. Defendant told his son that he got into an argument with Castro and confessed that he killed her. His son rented a motel room for defendant where he was arrested the following morning after Castro's body was discovered.

On August 23, 2017, a grand jury charged defendant with: first-degree murder, N.J.S.A. 2C:11-3(a)(1), (2) (count one); second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1) (count two); third-degree possession of a weapon for an unlawful purpose (glass bottle), N.J.S.A. 2C:39-4(d) (count three); fourth-degree unlawful possession of a weapon (glass bottle), N.J.S.A. 2C:39-5(d) (count four); third-degree possession of a weapon for an unlawful purpose (cell phone charging cord), N.J.S.A. 2C:39-4(d) (count five); fourth-degree unlawful possession of a weapon (cell phone charging cord), N.J.S.A. 3C:39-5(d) (count six); and third-degree theft by unlawful taking, N.J.S.A. 2C:20-3(a) (count seven).

At trial, defendant's counsel claimed Castro's death "wasn't murder" because defendant was "defending himself from an attack." Defendant's

recorded statement to the police was played for the jury and an officer that arrested defendant testified that he found alcohol, drugs, and Castro's jewelry and bank card in the motel room. Another officer who photographed defendant after his arrest testified that he only saw a few "faint scratch[s]" on his shoulder and neck.

A forensic scientist with the State Police testified that Castro's DNA was a "major contributor" of DNA found on defendant's shorts, a shard of glass, and the cell phone cord. A forensic pathologist stated that Castro's cause of death was "asphyxia due to compression of the neck" and explained that for asphyxiation to cause death it would take "minutes," not seconds. She noted that releasing pressure from strangulation immediately after loss of consciousness would result in the victim regaining consciousness. The pathologist also stated that Castro had several "skin scrapes and bruises" on her face, neck, left shoulder, left leg, back left arm, back right forearm, right lower back, and right ankle and "a laceration [that] was caused by a force" on the back of her head.

Castro's daughter also testified and identified defendant when asked if she "kn[e]w who murdered [her] mother." Castro's son testified similarly stating he

5

believed defendant killed his mother. Castro's son also stated when defendant picked him up defendant told him that his mother was at work.

During trial, the parties discussed the proposed jury instructions. The court's initial draft, as circulated to the parties, included a passion/provocation manslaughter charge. The State objected, claiming the charge was not required based on defendant's statement to the police because "mere words are not sufficient provocation." The court reserved on finalizing the charge until the close of testimony so that it could "proceed accordingly based upon the applicable case law [as to] what comes in and what doesn't come in."

Defendant testified at trial. Contrary to the version of the incident he described in his recorded statement, defendant stated that Castro, not he, was the aggressor. He testified that he was kneeling down and putting beer in the refrigerator when Castro "began to say obscene words" that made him angry. Castro then started the physical altercation while he had his back to her by throwing a beer bottle at his direction causing the bottle to shatter. Defendant testified that Castro, who was heavier than him, "call[ed him] a son of a bitch" and then "jumped on top of [him]" while he was on his knees.

Defendant explained that he had a spinal injury in his lower back, which resulted in metal placements in his neck and the need to walk with a prosthetic

6

boot. He stated that Castro grabbed him by those metal "pieces" and "strangle[d him]." When he tried to stand up from his kneeling position, Castro was on his back and the two fell backwards. In the fall, Castro "hit her head on the window" and let go of defendant. According to defendant, Castro then grabbed three phone charging cords that she used to choke him.

In response, defendant stated he took a leather shoelace in the shape of a noose that he used to put on his prosthetic boot, "threw it back" around Castro's neck, and "[a]s [he] pulled[,] the noose tightened up." He stated that Castro then passed out, after which he unsuccessfully attempted to resuscitate her. When asked to explain the inconsistences between his trial testimony and his recorded statement, defendant testified he provided the initial version of the incident to the police to protect Castro's "good image of a mother" and so the incident would not come out in the media, causing her children to suffer from people that "don't understand the situation."

During the charge conference held on the record pursuant to Rule 1:8-7(b), the court indicated it removed the passion/provocation instruction from the jury charge because it found "the facts presented [do] not warrant[] such a charge." Defendant's counsel did not object to the final charge, instead, characterizing it as "satisfactory." In closing arguments, defendant's counsel

again repeated defendant's theory of the case stating "August 16[] . . . wasn't murder. [Defendant] was acting in self[-]defense."

As to first degree murder, the court instructed the jury in part that "[i]f you determine that the State has proven beyond a reasonable doubt that the defendant purposely or knowingly caused death or serious bodily injury resulting in death[,] you must find the defendant guilty of murder." It also explained as to self-defense that:

> The State has the burden to prove to you beyond a reasonable doubt that the defense of self[-]defense is untrue. . . .
>
>     . . . .
>
> If the State does not satisfy this burden, . . . then it must be resolved in favor of the defendant and you must allow the claim of self[-]defense and acquit the defendant.

With regard to the jury charge for possession of the phone charging cord as a weapon for an unlawful purpose, the court instructed the jury that the State had the burden to prove those elements and noted "[t]he defense . . . contends that the defendant acted in self[-]defense when he used the cell phone charger cord on the person of Rufina Castro." The court gave a similar self-defense instruction on the possession of the glass bottle as a weapon for an unlawful purpose.

A-3952-18

The jury found defendant guilty on all counts. During sentencing, the court found applicable aggravating factors three, N.J.S.A. 2C:44-1(a)(3) ("The risk that the defendant will commit another offense . . . ."); six, N.J.S.A. 2C:44-1(a)(6) ("The extent of the defendant's prior criminal record and the seriousness of the offenses of which the defendant has been convicted . . . ."); and nine, N.J.S.A. 2C:44-1(a)(9) ("The need for deterring the defendant and others from violating the law . . . .") and did not find any mitigating factors.

On appeal, defendant presents the following issues for our consideration:

    I.    IT WAS PLAIN ERROR NOT TO GIVE AN INSTRUCTION ON PASSION-PROVOCATION MANSLAUGHTER WHEN SELF-DEFENSE WAS ALSO CHARGED. (Not Raised Below).

    II.    THE JURY INSTRUCTIONS ON SELF-DEFENSE WERE NOT INCORPORATED INTO THE INDIVIDUAL COUNTS AND WERE NOT SPECIFICALLY TAILORED TO THE FACTS OF THE CASE. (Not Raised Below).

    III.    IT WAS PLAIN ERROR TO ALLOW IMPROPER OPINION TESTIMONY FROM THE VICTIM'S SON AND DAUGHTER THAT THE DEFENDANT HAD MURDERED OR KILLED THEIR MOTHER.

    IV.    THE SENTENCING COURT ERRED BY FAILING TO FIND MITIGATING FACTOR [THREE], THAT THE DEFENDANT ACTED UNDER STRONG PROVOCATION, DESPITE IT BEING CLEARLY INDICATED BY THE RECORD.

A-3952-18

We first address defendant's argument that the trial judge committed plain error by failing to charge passion/provocation manslaughter as a lesser-included offense of murder. He maintains "the need for a passion/provocation manslaughter charge was clearly indicated from the record" based on defendant's trial testimony that "Castro called him a son of a bitch, jumped on his back, clawed and hit on a spot on his neck where he was vulnerable, and started choking him with a cell phone charger." We agree.

"When a defendant fails to object to an error or omission [about a jury charge] at trial, we review for plain error. Under that standard, we disregard any alleged error 'unless it is of such a nature as to have been clearly capable of producing an unjust result.'" State v. Funderburg, 225 N.J. 66, 79 (2016) (quoting R. 2:10-2). Reversal is warranted only where an error raises "reasonable doubt . . . as to whether the error led the jury to a result it otherwise might not have reached." Ibid. (alteration in original) (quoting State v. Jenkins, 178 N.J. 347, 361 (2004)). "The mere possibility of an unjust result is not enough." Ibid. A jury instruction is particularly "crucial to the jury's deliberations on the guilt of a criminal defendant," and "'[e]rrors [having a direct impact] upon these sensitive areas of a criminal trial are poor candidates for

rehabilitation' under the plain error theory." State v. Jordan, 147 N.J. 409, 422-23 (1997) (quoting State v. Simon, 79 N.J. 191, 206 (1979)).

In its jury instructions, a "trial court must give 'a comprehensible explanation of the questions that the jury must determine, including the law of the case applicable to the facts that the jury may find.'" State v. Baum, 224 N.J. 147, 159 (2016) (quoting State v. Green, 86 N.J. 281, 287-88 (1981)). Accordingly, "the court has an 'independent duty . . . to ensure that the jurors receive accurate instructions on the law as it pertains to the facts and issues of each case, irrespective of the particular language suggested by either party.'" Ibid. (alteration in original) (quoting State v. Reddish, 181 N.J. 553, 613 (2004)).

The rationale for imposing such an independent obligation on the trial judge in this context is that "[n]o defendant should be convicted of a greater crime or acquitted merely because the jury was precluded from considering a lesser offense that is clearly indicated in the record." State v. Garron, 177 N.J. 147, 180 (2003). The danger of prejudice to a defendant that may result from a trial judge's failure to charge a lesser-included offense to the jury is that "[w]here one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of some offense, the jury is likely to resolve its doubts in favor

11

of conviction." State v. Sloane, 111 N.J. 293, 299 (1988) (emphasis removed) (quoting Keeble v. United States, 412 U.S. 205, 212-13 (1973)).

As such, trial courts must "avoid presenting the jury with an 'all-or-nothing' choice, a choice between convicting a defendant of an offense greater than the one he committed and not convicting him at all despite his guilt of a lesser offense." State v. Maloney, 216 N.J. 91, 113 (2013) (citing Garron, 177 N.J. at 180). Further, the trial court reviews the evidence "in the light most favorable to defendant." State v. Bauman, 298 N.J. Super. 176, 198-99 (App. Div. 1997) (citing State v. Galloway, 133 N.J. 631, 648 (1993); State v. Moore, 113 N.J. 239, 287 (1988)).

"[I]f parties do not request a lesser-included-offense charge, reviewing courts 'apply a higher standard, requiring the unrequested charge to be "clearly indicated" from the record.'" State v. Fowler, 239 N.J. 171, 188 (2019) (quoting State v. Alexander, 233 N.J. 132, 143 (2018)); see also State v. Denofa, 187 N.J. 24, 42 (2006); N.J.S.A. 2C:1-8(e).[1] As such:

---

[1] This is to be distinguished from the invited error doctrine when a party on appeal "request[s] the trial court to take a certain course of action, . . . then condemn[s] the very procedure he sought and urged, claiming it to be error and prejudicial." State v. Pontery, 19 N.J. 457, 471 (1955). "Ordinarily, we would refuse to review this [type of] error . . . ." State v. Blanks, 313 N.J. Super. 55, 71 (1998) (citing Pontery, 19 N.J. at 471).

> The "clearly indicated" standard does not require trial courts either to "scour the statutes to determine if there are some uncharged offenses of which the defendant may be guilty," . . . or "'to meticulously sift through the entire record . . . to see if some combination of facts and inferences might rationally sustain' a lesser charge" . . . . Instead, the evidence supporting a lesser-included charge must "jump[] off the page" to trigger a trial court's duty to sua sponte instruct a jury on that charge.
>
> [Alexander, 233 N.J. at 143 (third and fifth alterations in original) (citations omitted).]

Passion/provocation manslaughter is a "well-established lesser-included offense of murder." State v. Carrero, 229 N.J. 118, 129 (2017). A criminal homicide may be considered manslaughter when "[a] homicide which would otherwise be murder . . . is committed in the heat of passion resulting from a reasonable provocation." N.J.S.A. 2C:11-4(b)(2). "Passion/provocation manslaughter is an intentional homicide committed under extenuating circumstances that mitigate the murder." State v. Robinson, 136 N.J. 476, 481 (1994). It "contains all the elements of murder except that the presence of reasonable provocation, coupled with defendant's impassioned actions, establish a lesser culpability." Id. at 482; see N.J.S.A. 2C:1-8(d)(3).

Four elements must be met for passion/provocation manslaughter: 1) there must be adequate provocation; 2) "the defendant must not have had time to cool off between the provocation and the slaying"; 3) the defendant must have

13

been actually impassioned by the provocation; and 4) "the defendant must not have actually cooled off before the slaying." Funderburg, 225 N.J. at 80 (quoting State v. Mauricio, 117 N.J. 402, 411 (1990)).

The first two elements are objective while the other two are subjective. Carrero, 229 N.J. at 129. Accordingly, a court should decide whether there is sufficient evidence of the first two elements. Ibid. "To warrant the passion/provocation jury charge, the evidence must [clearly indicate] only the first two elements; the subjective elements 'should usually be left to the jury to determine.'" Ibid. (quoting Mauricio, 117 N.J. at 413).

As the Supreme Court has previously noted:

> We emphasize that the actual reaction of the defendant is not a consideration at this point in the analysis. It is irrelevant at this stage whether the defendant in question did in fact "lose his cool." Neither the trial court in deciding whether to instruct the jury on the offense nor the jury in determining whether the offense of passion/provocation manslaughter applies should consider at this point how the defendant in fact reacted to the asserted provocation. Rather, both must limit the focus to the nature and adequacy of the provocation itself.
>
> [Mauricio, 117 N.J. at 412.]

The element of adequate provocation is measured by whether "loss of self-control is a reasonable reaction." State v. Foglia, 415 N.J. Super. 106, 126 (App.

Div. 2010) (quoting Mauricio, 117 N.J. at 412). With regard to the first element, "the provocation must be 'sufficient to arouse the passions of an ordinary [person] beyond the power of his [or her] control.'" Carrero, 229 N.J. at 129 (alterations in original) (quoting Mauricio, 117 N.J. at 412). "The generally accepted rule is that words alone, no matter how offensive or insulting, do not constitute adequate provocation to reduce murder to manslaughter." Funderburg, 225 N.J. at 80 (quoting State v. Crisantos, 102 N.J. 265, 274 (1986)). "Battery is . . . considered adequate provocation 'almost as a matter of law'" and the element may also be satisfied by "the presence of a gun or knife." Carrero, 229 N.J. at 129 (quoting Mauricio, 117 N.J. at 414).

In delineating the line between passion/provocation manslaughter and self-defense, the Supreme Court has held:

> If a defendant subjectively thinks that self-defense is necessary but does not intend fatal injury, in either the sense of knowledge or purpose, such evidence is relevant to the State's case on that issue. If such a defendant is aware that his or her acts create a risk of serious harm but unreasonably disregards that risk, then, if the essential elements of the crime are present, the defendant can be found guilty of manslaughter as defined by N.J.S.A. 2C:11-4[(a)] or [(b)], instead of murder. In some circumstances the evidence may bear upon the question of whether the defendant who committed a homicide in the heat of passion was reasonably provoked.

[State v. Bowens, 108 N.J. 622, 641 (1987) (citation omitted).]

Here, clear evidence existed in the record as to the elements of passion/provocation manslaughter and it was, therefore, clear error not to so charge the jury sua sponte. Defendant testified that Castro was the aggressor, threw a beer bottle, assaulted him by jumping on his back, struck a vulnerable area on his neck, and choked him with phone cords. That evidence objectively constituted provocation without an adequate cooling off period. We draw no conclusions on the persuasiveness of defendant's testimony but note our obligation, like the trial court, was to determine whether the passion/provocation charge was "clearly indicate[d]" by the record. In our view, the failure to charge on the lesser included offense raises a reasonable doubt that "the error led the jury to a result it otherwise might not have reached." Funderburg, 225 N.J. at 79.

The State relies on Crisantos, 102 N.J. at 280, and State v. Galicia, 210 N.J. 364 (2010), for the proposition that "[r]eviewing courts can consider the 'adequacy of the evidence of provocation and sufficiency of the evidence linking provocation to the homicide.'" It also argues "[t]o find a passion provocation charge, the jury would have had to not only discredit defendant's testimony indicating that he was afraid the victim would strangle him, but then also credit

16

A-3952-18

his version of events that the victim threw the beer bottle at him, threatened him, and choked him." In support, the State relies on factual inaccuracies throughout the record to show defendant's testimony is unreliable and notes an instruction on passion/provocation manslaughter "would have been inapposite with defendant's theory at trial of self-defense." We find neither case dispositive on the issue before us.

In Crisantos, a fifty-four-year-old inebriated victim was robbed and murdered while heading home. 102 N.J. at 267. The State's evidence showed that defendant and a second assailant attacked the victim, immobilized him by breaking his ankle, and then robbed him. Ibid. When another person approached, the attackers hid nearby. Ibid. After the person left to call the police, the defendant and his accomplice jumped on top of the victim, stabbing him repeatedly. Id. at 268. The defendant's account was that the victim provoked a fight by calling them names and ethnic epithets and then began a physical altercation during which he was stabbed. Id. at 268-69. Characterizing defendant's version as a "gross mismatch, an older inebriated man against two younger men, at least one armed with a knife," the court found no evidence of passion or extreme emotional disturbance. Id. at 279-80.

The defendant in Galicia, a spurned lover, killed his former boyfriend. 210 N.J. at 367-68. After a heated argument over possession of defendant's car, defendant testified that the victim was the initial aggressor and the parties engaged in a fist fight. Id. at 371-72. Defendant, however, then got into his car, drove it at the victim, hit him with the car, and drove several blocks with the victim on the car's hood resulting in the victim's eventual death. Ibid. The Court found that at the time of the offense, there was inadequate provocation, as well as a lack of evidence of "an absence of adequate cooling-off time." Id. at 385. Specifically, the Court noted "the victim in this case did not die in a physical altercation 'waged on equal terms'" because defendant "retreated to the safety of a locked car that he owned and controlled" before "exercise[ing] that control to drive in a manner that precipitated [the victim]'s death." Ibid. (quoting Crisantos, 102 N.J. at 274).

Unlike in Crisantos, defendant testified that Castro was heavier than him and that she escalated the physical altercation by attempting to strangle him. These facts do not indicate a "gross mismatch" as in Crisantos where the defendant escalated a physical altercation by resorting to stabbing the inebriated victim with a knife.

At trial, defendant testified that Castro went from jumping on his back and hitting the metal plates in his neck to choking him with phone cords. Contrary to the facts in Galicia, defendant's testimony, if believed, showed he was not in a controlling position. Rather, his trial testimony stated a physical altercation initiated by Castro "waged on equal terms." Crisantos, 102 N.J. at 274.

We also reject the State's position that, essentially, a reviewing court should ignore defendant's testimony because of factual inaccuracies in the record. As noted, when determining whether the trial record supports a jury charge, we are to review the evidence "in the light most favorable to the defendant." Bauman, 298 N.J. Super. at 198-99. Indeed, reviewing the "adequacy of the evidence of provocation," Crisantos, 102 N.J. at 280, does not permit us to make such credibility findings. Here, the passion/provocation charge was apparent from defendant's trial testimony without requiring the court to "meticulously sift[] through the entire record." Alexander, 233 N.J. at 143.

Further, although neither party substantively relies on Funderburg, 225 N.J. 66, we nonetheless discuss and distinguish that case from the facts presented here. In Funderburg, defendant was charged with attempted murder of his ex-partner's new boyfriend during a physical altercation in which defendant stabbed the boyfriend. 225 N.J. at 69-70. Leading up to the stabbing,

a chase ensued between defendant and the victim.  Id. at 72-73.  At trial, like here, neither party requested the passion/provocation attempted manslaughter charge to be included as a lesser offense to attempted murder.  Id. at 75.

On appeal, we reversed and remanded for failure to deliver the passion/provocation attempted manslaughter instruction.  Ibid.  The Supreme Court reinstated defendant's conviction, finding "the facts . . . did not clearly indicate that the objective elements of attempted passion/provocation manslaughter were present."  Id. at 82.  It found that the altercation was not threatening, despite a chase and "verbal sparring," and noted "there was a disagreement among the witnesses about who first handled the knife that later stabbed [the victim]."  Ibid.  The Court concluded even if the jury accepted that the victim first held the knife against defendant, it "would at most support the theory that [defendant] acted in self-defense."  Ibid.  As such, the Court did not find the failure to sua sponte provide the instruction to be in error.  Id. at 83-84.

Unlike in Funderburg, defendant's alleged "loss of self-control," Foglia, 415 N.J. Super. at 126, was, according to his trial testimony, in response to Castro initiating a physical altercation who then escalated the situation by choking defendant with the phone charging cords.  The defendant in Funderburg was responding to a verbal disagreement and non-threatening foot chase which,

objectively, is not a situation where a loss of self-control would be a reasonable reaction.  225 N.J. at 72-73.

Finally, since Funderburg, our Supreme Court has noted that regardless of whether a "passion/provocation charge is inconsistent with defendant's theories of self-defense," defendant may still be entitled to such a charge.  Carrero, 229 N.J. at 121 (citing State v. Brent, 137 N.J. 107, 118 (1994)).  Although decided under the lesser rational basis test, Carrero plainly rejects the State's argument that the trial court should overlook evidence that clearly indicates passion/provocation simply because it would have been contrary to defendant's self-defense theory.  See also Blanks, 313 N.J. Super. at 70-72 (finding plain error under the facts for the trial court to provide incorrect instructions on self-defense and failing to provide any instructions on passion/provocation manslaughter).

## III.

Defendant next relies on State v. Coyle, 119 N.J. 194, 224 (1990), and argues that the trial court's jury instructions on self-defense "failed to incorporate the absence of self-defense into each of the substantive counts . . . ."  Additionally, defendant maintains that because he never testified that he used the cell phone charging cord in self-defense, "[t]he factual inaccuracies in the

version given by the judge could have caused the jurors to ignore self-defense as it applied to all of the charges . . . ."  We disagree.

As noted, we review a defendant's failure to object to an error in a jury charge at trial under plain error.  See Funderburg, 225 N.J. at 79.  In determining whether an alleged defect in a charge rises to the level of reversible error, the alleged error must be "viewed in the totality of the entire charge, not in isolation."  State v. Chapland, 187 N.J. 275, 289 (2006); see also State v. Figueroa, 190 N.J. 219, 246 (2007).  "If the defendant does not object to the charge at the time it is given, there is a presumption that the charge was not error and was unlikely to prejudice the defendant's case."  State v. Singleton, 211 N.J. 157, 182 (2012).

Use of deadly force is justifiable if "the actor reasonably believes that such force is necessary to protect himself against death or serious bodily harm."  N.J.S.A. 2C:3-4(b)(2).  Such force is not justifiable, however, if defendant provoked the harm.  Ibid.  Whether the defendant's belief was reasonable is measured by what the jury, not the defendant, considers reasonable under an objective standard.  State v. Bess, 53 N.J. 10, 15-17 (1968); accord State v. Handy, 215 N.J. 334, 356-57 (2013).

We addressed the impact <u>Coyle</u> has on a trial court's obligation to provide jury charges on self-defense and stated:

> Citing [<u>Coyle</u>], defendant claims that the trial court committed plain error by failing to refer to the justifications of self-defense and defense of others in its instructions on the elements of murder. Defendant's reliance on <u>Coyle</u> is clearly misplaced. In <u>Coyle</u>, our Supreme Court found defective an instruction that foreclosed the jury from considering passion/provocation manslaughter "unless it determined that the State had failed to prove beyond a reasonable doubt the offense of murder." [191 N.J.] 222. The jury here was not told to disregard evidence of justification if it found the State had proven the statutory elements of murder. To the contrary, the trial court's charge clearly indicated to the jury that it was to acquit defendant if it harbored a reasonable doubt that the killing was justified by self-defense or defense of others. We perceive no error—far less plain error. <u>Cf.</u> <u>State v. Harris</u>, 141 N.J. 525, 556 (1995).
>
> [<u>State v. Bryant</u>, 288 N.J. Super. 27, 40 (1996).]

In this case, the court's self-defense charge was not plainly erroneous. Indeed, defendant concedes that the court's instruction on self-defense was consistent with the Model Jury Charge. The court did not provide a defective instruction that foreclosed the jury from considering self-defense "unless it determined that the State had failed to prove beyond a reasonable doubt the offense of murder." 119 N.J. at 222. Rather, the court explicitly instructed on each element of murder and that "[t]he State has the burden to prove to you

beyond a reasonable doubt that the defense of self[-]defense is untrue" and "[i]f the State does not satisfy this burden, . . . then it must be resolved in favor of the defendant and you must allow the claim of self[-]defense and acquit the defendant."

Further, the court charged on self-defense as to each of the applicable offenses. Defendant offers no explanation as to how the court's description of self-defense on the possession of a weapon for an unlawful purpose charge would have, as defendant posits, caused the jury to ignore the court's correct and clear instructions on self-defense. See Bryant, 288 N.J. Super. at 37-39 (finding no indication that defendant was prejudiced when defendant "conced[ed] that the trial court's instruction was a correct statement of the law, . . . [but] claim[ed] that it was prejudicial in the context of the facts presented"). Defendant's position also ignores his recorded statement regarding his use of the phone charging cords. We are satisfied upon a review of the charge as a whole that the court's self-defense charge was proper.

IV.

Defendant further argues the testimony of Castro's son and daughter identifying defendant as Castro's murderer were "unfounded and irrelevant opinions on [defendant]'s guilt" in violation of N.J.R.E. 701 as they did not have

firsthand knowledge of the killing. He contends this testimony "had the clear capacity to produce an unjust result" because it "could have influenced the credibility of the State's remaining witnesses." Although defendant concedes he did not object to the testimony as a violation of N.J.R.E. 701, he argues the trial court should have independently instructed the jury to disregard the testimony. We address this issue because it could serve as an independent basis to reverse the jury's verdict and also to provide guidance with regard to any future trial proceeding.

Failure to object to testimony "signif[ies] that in the atmosphere of the trial [that defendant] did not believe [he] was prejudiced by this testimony." State v. Engel, 249 N.J. Super. 336, 376 (App. Div. 1991) (citing State v. Marks, 201 N.J. Super. 514, 534 (App. Div. 1985)). Conclusory remarks by witnesses that would have been "better left unsaid" do not warrant reversal if it "did not have the capacity to sway the jury." Id. at 374. Even "significant errors" by a trial court can be insufficient to "tip the scales" if "evaluated in light of the vast evidence against defendant . . . ." State v. Prall, 231 N.J. 567, 588 (2018) (citing State v. Daniels, 182 N.J. 80, 95 (2004); State v. Marrero, 148 N.J. 469, 497 (1997)).

A-3952-18

Lay opinion testimony is permitted when it is "rationally based on the perception of the witness" and "will assist in understanding the witness' testimony or in determining a fact in issue." N.J.R.E. 701. Lay opinion testimony "is not a vehicle for offering the view of the witness about a series of facts that the jury can evaluate for itself or an opportunity to express a view on guilt or innocence." State v. McLean, 205 N.J. 438, 462 (2011). "[T]estimony in the form of an opinion, whether offered by a lay or an expert witness, is only permitted if it will assist the jury in performing its function." Ibid. "The [Rule] does not permit a witness to offer a lay opinion on a matter . . . as to which the jury is as competent as he to form a conclusion . . . ." Id. at 459 (internal quotation marks and citation omitted).

Here, defendant did not object to the testimony of Castro's children for lack of foundation and, therefore, we review the issue under the plain error standard. Engel, 249 N.J. Super. at 376. Even were we to assume the testimony of Castro's children violated N.J.R.E. 701, defendant has failed to exhibit the errors had "the capacity to sway the jury." Engel, 249 N.J. Super. at 374. Indeed, defendant argued that he killed Castro in self-defense and the issue of his identity was not in dispute but rather his degree of culpability. Based on our review of the record as a whole, we conclude the testimony of Castro's children

did not "tip the scales" against defendant such that the interests of justice require reversal. Prall, 231 N.J. at 588; see also, e.g., State v. Hightower, 120 N.J. 378, 410 (1990) (holding "the strength of the State's case, the length of the trial, and the number of witnesses called" made a sergeant's testimony that defendant "was the person responsible for the murder" harmless error). On remand, however, the parties should refrain from eliciting testimony contrary to of the Rules of Evidence.

## V.

In light of our decision reversing defendant's murder conviction and remanding the matter for further proceedings, we do not address defendant's final point that his sentence was excessive. Finally, to the extent we have not addressed any of the parties' arguments, it is because we have concluded that they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION