**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3367-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

DESMOND D. LANE,

    Defendant-Appellant.

_____

Argued January 29, 2025 – Decided April 17, 2025

Before Judges Rose and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Salem County, Indictment No. 21-03-0223.

Kevin S. Finckenauer, Assistant Deputy Public Defender, argued the cause for appellant (Jennifer N. Sellitti, Public Defender, attorney; Kevin S. Finckenauer, of counsel and on the briefs).

Matthew Bingham, Assistant Prosecutor, argued the cause for respondent (Kristin J. Telsey, Salem County Prosecutor, attorney; Matthew Bingham, of counsel and on the brief).

PER CURIAM

Following a jury trial, defendant Desmond D. Lane appeals from an amended May 2, 2023 judgment of conviction (JOC) for two counts of murder and aggravated assault. Defendant was sentenced to aggregate prison term of sixty-one-and-a-half years with a sixty-one-and-a-half-year parole ineligibility term, and $15,166.13 restitution. We affirm the convictions but remand solely for the trial court to consider the fairness of the overall length of defendant's sentence pursuant to State v. Torres, 246 N.J. 246 (2021).

I.

On March 23, 2021, a grand jury indicted defendant for the following offenses: second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1) (count one); second-degree unlawful possession of a weapon without a permit, N.J.S.A. 2C:58-4 and :39-5(b)(1) (count two); three counts of second-degree aggravated assault, causing serious bodily injury to another, N.J.S.A. 2C:12-1(b)(1) (counts three, four and five); second-degree attempted murder, N.J.S.A. 2C:11-3(a)(1) and (2) (count six);[1] and two counts of first-degree murder, N.J.S.A. 2C:11-3(a)(1) (counts seven and eight).

---

[1] The indictment erroneously omitted the citation for an attempted crime, N.J.S.A. 2C:5-1.

The State later amended count six to charge fourth-degree aggravated assault, N.J.S.A. 2C:12-1(b)(3). Counts two, three, four and five of the indictment were dismissed on the State's motion prior to the six-day trial on the remaining charges, which commenced on February 15, 2023.

Trial testimony established the following. Defendant lived with his paramour Latoya Hill,[2] Latoya's daughter Candeisha, and Candeisha's ten-year-old daughter London. On the evening of October 7, 2020, defendant and Candeisha got into an argument because defendant slammed the front door. According to Candeisha, she was upset with defendant because she had just repaired damage he previously caused to the door. After Candeisha left the home with her boyfriend, Allen Gresham, she received a call from Latoya, who told her defendant was walking around the house with a butcher knife. Candeisha drove by a police vehicle and relayed to the officers what Latoya told her, and the police accompanied Candeisha back to the house.

Latoya testified she told the responding officers, not Candeisha, that defendant had a knife. The officers spoke to defendant but did not find a knife

---

[2] Because Latoya, Candeisha and London share a common surname, we refer to them by their first names. No disrespect is intended.

A-3367-22

on his person. Candeisha testified the officers told defendant to leave the house "for a day or so."

A few minutes after the officers left, Candeisha called police and reported defendant was attempting to break her car windows. Officers responded but did not observe any damage to Candeisha's vehicle.

After the police left the home the second time, defendant "started chasing [Candeisha] down the street." She got in her car, called her brother Derek Akins, and told him defendant was chasing her. At Akins's request, Candeisha picked up Akins, his girlfriend Ruby[3] and Candeisha's cousin John Robinson, and drove everyone back to the residence. Latoya, London and Gresham were in the house but defendant was not. Candeisha spoke to Akins and Robinson for five to ten minutes and then retreated to her third-floor room to go to sleep. Akins and Robinson remained downstairs.

At some point in the early hours of October 8, 2020, Akins woke Candeisha and told her defendant had returned. Akins asked Candeisha to go downstairs to witness his telling defendant he was no longer welcome in the home. As Candeisha and Akins went downstairs, she briefly observed a gun in the small of Akins's back.

---

[3] Ruby's last name is not indicated in the record.

Candeisha paused on the second-floor landing and saw defendant had "pulled [a] knife out on" Robinson and they were arguing by the front door. According to Candeisha, the argument began "because [Robinson] had said something to [defendant]." She testified defendant was carrying a tote containing his clothes and wore a "full face mask," but she recognized him.

The argument between Akins, Robinson and defendant quickly escalated. Candeisha said defendant tried to stab Robinson with the knife, and Akins climbed backwards up the stairs to the second floor. She then saw a gun on the stairs, which defendant picked up and began shooting. He shot Akins in the hallway and then went after Robinson, who fled to a room. Defendant pushed the door down and shot Robinson. As Candeisha tried to enter another room, defendant shot her in the leg.

Latoya testified she was in her second-floor bedroom for most of the night but was awakened by commotion. She opened the door to her room, saw Candeisha standing on the stairs, and observed defendant and Robinson "fighting over [a] knife at the bottom of the steps." Latoya retreated into her room and called the police.

Latoya then heard gunfire and Candeisha yell "I've been shot." From her doorway, Latoya observed Akins and Robinson lying in the second-floor

5

hallway with multiple gunshot wounds. She also saw defendant standing on the second-floor landing, still holding the gun. Defendant then ran downstairs and out the front door with the gun. Akins and Robinson both died from multiple gunshot wounds.

Following the close of trial testimony, the court conducted a jury charge conference. Defense counsel initially declined to request any lesser-included offenses of the murder charges. Notwithstanding counsel's declination, the trial court stated it had an obligation to charge the jury on lesser-included offenses supported by the evidence, and found it appropriate to charge the jury on aggravated manslaughter and reckless manslaughter as lesser-included offenses of murder. Defense counsel then sought a passion/provocation manslaughter instruction, but the court denied the request, finding the charge was not supported by the evidence.

On March 1, 2023, the jury returned a guilty verdict on second-degree possession of a weapon for an unlawful purpose (count one), fourth-degree reckless aggravated assault with a deadly weapon as a lesser-included offense of attempted murder (count six), and two counts of first-degree murder (counts seven and eight).

6

On appeal, defendant presents the following issues for our consideration:

POINT I

BECAUSE THE SHOOTING WAS IMMEDIATELY PRECEDED BY A PHYSICAL ALTERCATION BETWEEN [DEFENDANT] AND THE TWO VICTIMS, ONE OF WHOM WAS ARMED WITH A LOADED HANDGUN, THE TRIAL COURT ERRED IN REFUSING TO INSTRUCT THE JURY ON PASSION/PROVOCATION MANSLAUGHTER AS LESSER-INCLUDED OFFENSES FOR THE MURDER COUNTS.

    A.    The Testimony at the Trial that a Physical Struggle Ensued Between [Defendant] and the Victims as They Tried to Remove Him From the House, and that One of the Victims Engaged in the Struggle Was Armed with a Loaded Handgun, Was Sufficient to Warrant a Passion/Provocation Instruction.

    B.    Defense Counsel Sufficiently Advocated for the Passion/Provocation Instruction to the Court Despite an Initial Request for an All-or-Nothing Trial, and the Trial Court's Stated Reasons for Denying the Instruction Were Legally Erroneous.

POINT II

AT SENTENCING, THE TRIAL COURT MADE ERRORS IN WEIGHING THE AGGRAVATING FACTORS AND FAILED TO CONDUCT THE APPROPRIATE ANALYSIS BEFORE IMPOSING THREE CONSECUTIVE SENTENCES, RESULTING IN AN EXCESSIVE SENTENCE AMOUNTING TO LIFE WITHOUT THE POSSIBILITY OF PAROLE.

II.

We first address defendant's contention the trial court erred in denying his request to charge the jury on the lesser-included offense of passion/provocation manslaughter. Specifically, he argues there was a sufficient rational basis for the jury to conclude that he was adequately provoked because the testimony showed there was a physical altercation between himself and the victims shortly before the shooting. Because Akins initially carried the gun, defendant argues the jury could have inferred that Akins produced the gun during the altercation and threatened defendant with it.

It is well established that "[a]ppropriate and proper charges to a jury are essential for a fair trial." State v. Daniels, 224 N.J. 168, 180 (2016). "[E]rroneous instructions on material points are presumed to be reversible error." State v. Carrero, 229 N.J. 118, 127 (2017) (quoting State v. Nelson, 173 N.J. 417, 446 (2002)).

When a defendant requests a lesser-included offense, we apply a "rational-basis test" to review the denial of the instruction. Id. at 127-28. Pursuant to N.J.S.A. 2C:1-8(e), "[t]he court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense." Accordingly, we must determine "whether

'the evidence presents a rational basis on which the jury could [1] acquit the defendant of the greater charge and [2] convict the defendant of the lesser.'" Carrero, 229 N.J. at 128 (alterations in original) (quoting State v. Brent, 137 N.J. 107, 117 (1994)). A defendant is entitled to a lesser-included passion/provocation manslaughter charge if there is a basis for the charge, regardless of whether the charge is consistent with the defense theory. See id. at 121 (citing Brent, 137 N.J. at 118).

"Passion/provocation manslaughter is an intentional homicide committed under extenuating circumstances that mitigate the murder." State v. Robinson, 136 N.J. 476, 481 (1994) (citing 2 Wayne R. LaFave & Austin W. Scott, Jr., Substantive Criminal Law § 7.10, at 252 (1986)). N.J.S.A. 2C:11-4(b)(2) codifies passion/provocation manslaughter as when "[a] homicide which would otherwise be murder under [N.J.S.A.] 2C:11-3 is committed in the heat of passion resulting from a reasonable provocation."

There are four elements to passion/provocation manslaughter: (1) "the provocation must be adequate"; (2) "the defendant must not have had time to cool off between the provocation and the slaying"; (3) "the provocation must have actually impassioned the defendant"; and (4) "the defendant must not have actually cooled off before the slaying." State v. Mauricio, 117 N.J. 402, 411

9

(1990) (citing LaFave & Scott, Jr., Substantive Criminal Law § 7.10, at 255). The first two elements are objective and are to be decided by the trial judge, while the last two are subjective and should be left to the jury's consideration. Carrero, 229 N.J. at 129 (citing Robinson, 136 N.J. at 490 and Mauricio, 117 N.J. at 411).

When evaluating whether provocation was adequate under the first prong, "the provocation must be 'sufficient to arouse the passions of an ordinary [person] beyond the power of his [or her] control.'" Ibid. (alterations in original) (quoting Mauricio, 117 N.J. at 412). Generally, words alone are insufficient to constitute adequate provocation. See State v. Crisantos, 102 N.J. 265, 274 (1986). However, "a threat with a gun or knife might constitute adequate provocation." Mauricio, 117 N.J. at 414 (citing State v. Powell, 84 N.J. 305, 320 (1980)). Likewise, "battery, except for a light blow, has traditionally been considered, almost as a matter of law, to be sufficiently provocative." Ibid.

Here, after the trial court determined the evidence supported charging the jury on lesser-included offenses of aggravated manslaughter and reckless manslaughter, defense counsel sought a manslaughter passion/provocation charge for the sake of "completeness." The trial court rejected defendant's

10

argument because no evidence in the record supported a finding defendant was adequately provoked by the victims:

> But there's no testimony that anybody was threatened by . . . Akins when he came down the stairs. There's testimony there was an argument. There's no testimony that he brandished the gun. There's no testimony that he threatened anybody with it. He had it on him, and then somewhere when he turned around to run upstairs he dropped it.

Defendant cites two cases, Mauricio, 117 N.J. 402, and Carrero, 229 N.J. 118, in support of his claim of error. In Mauricio, the defendant shot and killed the victim, whom he mistook for a bouncer who ejected him from a bar earlier that night. 117 N.J. at 404. The defendant and the bouncer first engaged in a violent physical altercation in which the bouncer pushed the defendant out the door. Id. at 414. The defendant later returned to the bar and the bouncer forcibly pinned him to a wall and kicked him. Ibid. Because the evidence established two violent physical altercations had occurred, a jury could infer that the defendant was provoked and lost self-control. Id. at 414-15.

Similarly, in Carrero the defendant shot and killed the victim after an argument. 229 N.J. at 124. There, the defendant and the victim argued after the defendant asked the victim not to speak to the defendant's girlfriend. Ibid. The defendant testified that the victim had a gun, they struggled with each other, and

11

the gun discharged, hitting the victim. Ibid. These facts supported a charge of passion/provocation manslaughter based on the defendant's testimony that the victim drew the gun, which the jury could find credible. Id. at 130-31. Even if the victim had not drawn the weapon, the Court determined the physical struggle "constituted a battery, which . . . rises to the level of adequate provocation." Id. at 130.

Here, there was no evidence that either Robinson or Akins provoked or threatened defendant. Candeisha's uncontroverted testimony was that, immediately preceding the shooting, defendant threatened Robinson with a knife. While the witnesses' testimony did not establish how Akins's gun went from the back of his pants to the stairs, Candeisha testified Akins retreated backwards up the stairs as defendant wielded the knife. Immediately thereafter, Candeisha saw the gun on the stairs and then saw defendant pick it up. Thus, the record does not support defendant's contention that the most probable scenario was that Akins drew the gun and threatened defendant with it.

While the trial court must evaluate the evidence in the light most favorable to the defendant, Carrero, 229 N.J. at 128, it cannot conjure hypothetical scenarios out of whole cloth. See State v. Funderburg, 225 N.J. 66, 70 (2016) (noting a reviewing court cannot "construct[] a hypothetical and factually

unsupported scenario" to conceivably constitute adequate provocation). Although Akins introduced the gun into the home, nothing in the record established he threatened defendant with it, or that defendant even knew Akins had a gun until he saw it on the stairs. Because the evidence adduced at trial did not demonstrate a sufficient basis to establish adequate provocation, the trial court did not err in declining to instruct the jury on passion/provocation manslaughter.

Turning to defendant's second point, he argues the court erroneously imposed aggravating factor one, N.J.S.A. 2C:44-1(a)(1), improperly weighed aggravating factor three, N.J.S.A. 2C:44-1(a)(3), failed to analyze the overall fairness of the consecutive sentences, and failed to hold an ability to pay hearing prior to imposing restitution.

Our deferential review of a sentencing decision is well-established. See State v. Cuff, 239 N.J. 321, 347 (2019). An appellate court "must not 'substitute its judgment for that of the sentencing court.'" State v. Liepe, 239 N.J. 359, 370 (2019) (quoting State v. Fuentes, 217 N.J. 57, 70 (2014)). Rather, we should affirm a trial court's sentence unless: "(1) the sentencing guidelines were violated; (2) the findings of aggravating and mitigating factors were not 'based upon competent credible evidence in the record'; or (3) 'the application of the

guidelines to the facts' of the case 'shock[s] the judicial conscience.'" State v. Bolvito, 217 N.J. 221, 228 (2014) (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).

Here, the court sentenced defendant to eighteen months with an eighteen-month parole ineligibility term for aggravated assault (amended count six), thirty years with a thirty-year parole ineligibility term for each count of murder (counts seven and eight), with count seven imposed consecutively to count six and count eight imposed consecutively to count seven. Count one was merged with count seven.

In imposing sentence, the court considered aggravating and mitigating factors pursuant to N.J.S.A. 2C:44-1(a) and (b), respectively. The court found aggravating factor one (the nature and circumstances of the offense, and the role of the actor in committing the offense, including whether it was committed in an especially heinous, cruel, or depraved manner) and gave this factor moderate weight based on defendant's firing multiple shots in a home where a child was present and because defendant's actions exceeded those necessary to commit the murders.

The court also found aggravating factor three (the risk that the defendant will commit another offense) and afforded it "significant weight" due to

14

defendant's criminal history, which included three pending charges; aggravating factor six (the extent of the defendant's prior criminal record and the seriousness of the offenses of which the defendant has been convicted) and gave it moderate weight based on defendant's criminal record; and aggravating factor nine (the need for deterring the defendant and others from violating the law) and gave it significant weight.

The court found mitigating factor five (the victim of the defendant's conduct induced or facilitated its commission) and gave it slight weight, because Akins introduced the gun into the home.

After weighing the factors, the court imposed consecutive sentences on the murder convictions based primarily on its finding there were multiple victims, each with multiple gunshot wounds. At the State's request and with defendant's consent, the court imposed restitution.

Defendant argues the trial court should not have found aggravating factor one because, in doing so, the court impermissibly double-counted elements of the offenses. Defendant argues the facts on which the court relied to find aggravating factor one were already encompassed by the charges, and cites the State's failure to request aggravating factor one as further evidence that it is unsupported by the record.

15

As an initial matter, a sentencing court is not bound by the State's request for aggravating factors. Rather, the trial court is tasked with evaluating all the aggravating and mitigating factors encompassed in N.J.S.A. 2C:44-1 and determining which factors, if any, apply. See Fuentes, 217 N.J. at 72. Each factor must be supported by "competent, reasonably credible evidence." Ibid. (quoting Roth, 95 N.J. at 363). Thus, in accordance with its responsibility, the trial court looked at the factors "independently and along with the submissions made by counsel."

When evaluating whether aggravating factor one applies, a court "reviews the severity of the defendant's crime, 'the single most important factor in the sentencing process,' assessing the degree to which [the] defendant's conduct has threatened the safety of its direct victims and the public." Fuentes, 217 N.J. at 74 (quoting State v. Lawless, 214 N.J. 594, 609 (2013)). In its evaluation, the court must take care not to "double-count" facts that are elements of the offense for which the defendant was convicted. See State v. Yarbough, 100 N.J. 627, 645 (1985). Yet, "[i]n appropriate cases, a sentencing court may justify the application of aggravating factor one, without double-counting, by reference to the extraordinary brutality involved in an offense." Fuentes, 217 N.J. at 75.

Defendant was convicted of two counts of first-degree murder, which requires that "[t]he actor purposely causes death or serious bodily injury resulting in death." N.J.S.A. 2C:11-3(a)(1). Here, the court noted defendant shot three individuals and "fired that firearm multiple times in a very narrow stairway of a house where he was well aware that other people were located," including Candeisha, Latoya, Gresham, Ruby and ten-year-old London.

The court also noted the injuries defendant inflicted on the victims:

> Akins was shot multiple times, including shots to his chest, his abdomen, and his upper left arm. He had a graze wound to his right thumb. . . . Robinson was shot in his hip and in his head. Candeisha testified that she saw defendant standing over the men who had fallen to the floor and shooting them. There were eight discharged casings recovered and admitted into evidence.

The court found aggravating factor one was appropriate based on defendant's firing multiple shots "exceeding . . . what would have been necessary to prevent the [victims] from having any further contact with" him. See State v. Mara, 253 N.J. Super. 204, 214 (App. Div. 1992) ("[W]hen one injury alone is life threatening, the fact that several other injuries were also life threatening permits a judge to consider those additional injuries as an aggravating factor without double counting."). Because these considerations were not elements of

17

the offenses for which defendant was convicted, they did not constitute impermissible double-counting.

Defendant also challenges the applicability of aggravating factor three, based on the trial court's consideration of pending charges that were subsequently dismissed.

A defendant's criminal history is a key consideration in determining whether aggravating factor three applies. See State v. Rivera, 249 N.J. 285, 300 (2021) ("In deciding whether a defendant is likely to offend in the future, sentencing courts frequently look to the defendant's criminal history."). However, "unproved allegations of criminal conduct should not be considered" by a sentencing court. See State v. Farrell, 61 N.J. 99, 107 (1972). If a charge is pending, the court "should not . . . opine[] about the defendant's guilt with respect to those charges." State v. Tillery, 238 N.J. 293, 326-27 (2019); see also State v. K.S., 220 N.J. 190, 199 (2015) (holding arrests or dismissed charges not resulting in a conviction should not be considered when issuing a sentence).

Regarding aggravating factor three, the court stated:

> I find that aggravating factor [three] does apply, the risk that the defendant will commit another offense. I give this factor significant weight based not only upon the circumstances of this case and his history, but upon the fact that he has multiple other cases pending; three of them, all of which occurred in or around 2020. They're

being dismissed today, but there was repetitive criminal conduct within a very short period of time[,] and I think there's a significant risk that it will recur in this particular defendant.

Prior to the court's imposition of sentence, the State confirmed the open charges would be dismissed at the end of the hearing. Thus, the court should not have considered these pending charges when issuing its sentence. See K.S., 220 N.J. at 199.

However, with these charges excised from consideration, aggravating factor three is nevertheless amply supported by the record. As the trial court recited, the presentence report reflects defendant's unlawful conduct began with a juvenile adjudication for sexual contact, which resulted in the imposition of Megan's Law registration requirements pursuant to N.J.S.A. 2C:7-2. As an adult, defendant had convictions for resisting arrest in 2013, unlawful possession of a weapon in 2016 and failure to verify his address under Megan's Law in 2019. He was on probation for the 2019 conviction when he committed the instant offenses.

Accordingly, defendant's juvenile and adult history—which the court relied upon and referenced—amply supported the finding of aggravating factor three and defendant's high risk of reoffending. See Tillery, 238 N.J. at 327 (determining the trial court should not have considered the defendant's pending,

19

and later dismissed, charges but holding "the court's reliance on such conduct as one of several factors supporting two of the three aggravating factors does not warrant resentencing.").

Next, defendant urges us to remand this matter for the trial court to explicitly set forth the "overall fairness" of imposing consecutive sentences on the two counts of murder pursuant to Torres. The State concedes the court failed to make an explicit finding on overall fairness but argues we should affirm because the judge clearly considered the fairness of the sentence.

"[T]rial judges have discretion to decide if sentences should run concurrently or consecutively." State v. Miller, 205 N.J. 109, 128 (2011) (citing N.J.S.A. 2C:44-5(a)). Cases of multiple homicide victims, such as this one, "represent especially suitable circumstances for the imposition of consecutive sentences." State v. Carey, 168 N.J. 413, 428 (2001). "[W]hen determining whether consecutive sentences are warranted," a court is required "to perform the well-known assessment of specific criteria" commonly referred to as the Yarbough factors. State v. Randolph, 210 N.J. 330, 353 (2012). Those factors are:

> (1) there can be no free crimes in a system for which the punishment shall fit the crime;

(2) the reasons for imposing either a consecutive or concurrent sentence should be separately stated in the sentencing decision;

(3) some reasons to be considered by the sentencing court should include facts relating to the crimes, including whether or not:

> (a) the crimes and their objectives were predominantly independent of each other;
>
> (b) the crimes involved separate acts of violence or threats of violence;
>
> (c) the crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior;
>
> (d) any of the crimes involved multiple victims;
>
> (e) the convictions for which the sentences are to be imposed are numerous;

(4) there should be no double counting of aggravating factors;

(5) successive terms for the same offense should not ordinarily be equal to the punishment for the first offense . . . .[4]

[Torres, 246 N.J. at 264 (quoting Yarbough, 100 N.J. at 643-44).]

---

[4] The sixth factor has been superseded by statute. See State v. Eisenman, 153 N.J. 462, 478 (1998) (citing N.J.S.A. 2C:44-5(a)).

A-3367-22

In Torres, our Supreme Court reaffirmed a trial court's duty to issue "[a]n explicit statement, explaining the overall fairness of a sentence imposed on a defendant" when assessing the Yarbough factors. 246 N.J. at 268 (citing State v. Miller, 108 N.J. 112, 122 (1987)).

Although the trial court carefully explained the appropriateness of consecutive sentences, it did not provide "an explanation for the overall fairness of [the] sentence" mandated by Torres, 246 N.J. at 272-74. See also id. at 270 ("The mere identification of Yarbough factors as present when recounting the facts of defendant's offenses is no substitute for the required fairness assessment."). Consequently, we are constrained to order a limited remand "to allow the judge to provide '[a]n explicit statement, explaining the overall fairness' of the sentences imposed." State v. Amer, 471 N.J. Super. 331, 359 (App. Div. 2022) (alteration in original) (quoting Torres, 246 N.J. at 268), aff'd as modified on other grounds, 254 N.J. 405, 410 (2023), cert. denied, 144 S. Ct. 1006 (2024). We stress that the remand is limited to a Torres analysis, not a complete resentencing.

Lastly, defendant argues the trial court erred in imposing restitution without holding an ability to pay hearing. Restitution must be ordered under N.J.S.A. 2C:44-2(b) if:

(1) The victim, or in the case of a homicide, the nearest relative of the victim, suffered a loss; and

(2) The defendant is able to pay or, given a fair opportunity, will be able to pay restitution.

When imposing a restitution amount, "the court shall take into account all financial resources of the defendant, including the defendant's likely future earnings, and shall set the amount of restitution so as to provide the victim with the fullest compensation for loss that is consistent with the defendant's ability to pay." N.J.S.A. 2C:44-2(c)(2). A court may impose restitution "even when the [defendant] is presently unable to pay either the entire amount or a lesser amount based on a reasonable payment schedule." State in Interest of R.V., 280 N.J. Super. 118, 122 (App. Div. 1995).

The trial court "must explain the reasons underlying the sentence, including the decision to order restitution, the amount of the restitution, and its payment terms." State v. Scribner, 298 N.J. Super. 366, 371 (App. Div. 1997).

In accordance with N.J.S.A. 2C:44-2(c)(2), the restitution here was ordered at the request of the Victims of Crime Compensation Office (VCCO), for reimbursement of monies the VCCO paid to the victims' families to compensate their losses. During the sentencing hearing, the State indicated it had received "a pair of letters" from the VCCO seeking restitution for expenses

it incurred on behalf of the families of Akins and Robinson. Defense counsel had "no objection" to the VCCO restitution, acknowledging he had received documentation from the State indicating the VCCO had "paid that amount." Because there was no dispute as to the amount of restitution or defendant's ability to pay, there was no need for a hearing. See State v. Orji, 277 N.J. Super. 582, 589-90 (App. Div. 1994).

Although the trial court did not explain its decision in ordering restitution to the VCCO, defendant unequivocally consented to the amount ordered, did not contest his ability to pay or request an ability to pay hearing, and instead raises this issue for the first time on appeal. It is well established that issues not raised before the trial court should not be considered on appeal, except for limited circumstances not applicable here. See State v. Robinson, 200 N.J. 1, 20 (2009). We therefore decline to address this newly-minted issue.

Affirmed in part and remanded in part for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-3367-22