**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2213-22

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

D.M.W.,[1]

     Defendant-Appellant.

_____

Submitted April 2, 2025 – Decided July 25, 2025

Before Judges Mayer and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 22-09-2426.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Daniel S. Rockoff, Assistant Deputy Public Defender, of counsel and on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent (Debra G. Simms, Deputy Attorney General, of counsel and the brief).

_____

[1] We use initials and pseudonyms to protect the victim's privacy. R. 1:38-3(c)(12).

PER CURIAM

After a jury trial, defendant D.M.W. appeals from the March 3, 2023 judgment of conviction (JOC) for third-degree terroristic threats - domestic violence, N.J.S.A. 2C:12-3(a) and :25-19; and second-degree attempted aggravated arson, N.J.S.A. 2C:5-1(a) and :17-1(a)(1); and imposing an aggregate ten-year prison term. We affirm.

In 2021, defendant and C.M. (Charlotte), who had been married for thirteen years, were separated, and Charlotte lived in the basement of a rooming house. On October 13, 2021, at approximately 2:30 a.m., defendant left Charlotte a voicemail saying, "I'll bet you that motherfucker going out in smoke tonight. Bet you that. Better be woke if you want to make it out of there." Charlotte listened to the voicemail at approximately four or five o'clock in the morning and, because it made her "fearful," she was unable to go back to sleep. Throughout the night, Charlotte noticed "a smell . . . like, a little . . . chemical scent."

The next morning, Charlotte's neighbor noticed a "burn[ed] residue in [her] walkway." The neighbor's surveillance cameras captured video of defendant at 3:24 a.m., pouring black liquid on Charlotte's basement window,

flicking a lighter and holding it near the liquid, which "caused a flame" but did not ignite the liquid. Defendant then left the area.

The neighbor showed the surveillance video to Charlotte, who also noticed "wet and oily" fluid on the ground near her window. Charlotte testified there was no fire, smoke or property damage.

A Newark police officer responded to the scene and viewed the surveillance video. He canvassed the area and found an empty motor oil container, which was visible in the video. The officer observed a "wet and oily" liquid on the outside of Charlotte's bedroom window. He identified the liquid as motor oil based on its smell and texture, but the substance was not collected as evidence or tested by a laboratory.

After defendant was charged and arrested, he called Charlotte from jail and said he knew the neighbor had given her the surveillance video and his face was not visible in it.

On September 23, 2022, an Essex County grand jury indicted defendant, charging him with third-degree terroristic threats - domestic violence, N.J.S.A. 2C:12-3(a) and :25-19 (count one); and second-degree attempted aggravated arson, N.J.S.A. 2C:5-1(a) and :17-1(a)(1) (count two).

On December 13 and 14, 2022, the case was tried by Judge Arthur J. Batista and a jury. Charlotte, the neighbor and the police officer testified for the State. At the close of the State's case-in-chief, defendant moved for a judgment of acquittal, which the State opposed.

The trial court denied defendant's motion, finding:

> In this case the court finds that the State has established the[] elements sufficient to enable a jury to potentially find the defendant of attempting to commit aggravated arson through the testimony of [Charlotte], who stated that the defendant, her husband, called her in the early morning hours of October 13[], left a voicemail that was admitted into evidence as S-9, which could be taken as a threat to commit an act involving something with regard to smoke. In addition, the testimony of [Charlotte] and the videos entered S-13A, B, and C, wherein it is alleged that the defendant is attempting to light [Charlotte]'s bedroom window ablaze, in consideration of the totality of the circumstances presented, could enable a jury to find the defendant attempted to commit aggravated arson. It does not matter that the defendant failed to accomplish his intended result because the facts were not as a reasonable person would have believed them to be. It is no defense that a defendant could not succeed in reaching his intended result because of the circumstances unknown to him. The fact that the substance alleged to have been doused on the home would not ignite when the individual on the video tried to light the substance on fire is not relevant. A jury could determine that an attempt at aggravated arson is established by the evidence presented.

A-2213-22

The State has introduced evidence with all reasonable inferences being drawn on each element of each offense charged when viewed in the light most favorable to the State it is sufficient to warrant a conviction, and as such a jury could conclude beyond a reasonable doubt that the defendant is guilty of the offenses charged. As such, the motion for a judgment of acquittal is denied.

Defendant elected not to testify and did not call any witnesses.

In addition to the lesser included offense of third-degree attempted arson, defendant requested the court charge the jury with disorderly persons criminal mischief and attempted criminal mischief. The court agreed the lesser-included arson charge was appropriate but denied defendant's request to charge on criminal mischief:

> [T]he essence of the case is the domestic relationship between the parties and the actions that were . . . alleged by the State to have taken place as to the window outside of her bedroom in a rooming house. The victim in this case is not the property owner. There was no testimony or . . . evidence related to any proof of damage to the property. There has been no evidence presented regarding any pecuniary loss. So in the event that the jury was required to make a decision on criminal mischief, they couldn't determine the value of any damage. There's been no proof, no testimony. It wasn't part of this case, so grading would certainly be affected.
>
> I find that given the totality of the proofs that were presented in this case, there is no rational basis for the jury to acquit the defendant of both the second- and

5

third-degree arson, but to find him guilty of criminal mischief or attempted criminal mischief. So I agree with the State. It would add unnecessary confusion and I don't think it fits in with the proofs and the allegations in this case. So for those reasons the court has chosen not to include that as a lesser included offense of the arson charges.

The jury convicted defendant on both charged counts of the indictment.

The court conducted the sentencing hearing on February 10, 2023. Pursuant to N.J.S.A. 2C:44-1(b), defendant requested the court find mitigating factor two (the defendant did not contemplate that the defendant's conduct would cause or threaten serious harm). Defendant declined to make a statement prior to the imposition of sentence.

Pursuant to N.J.S.A. 2C:44-1(a), the State requested the court find aggravating factors one (the nature and circumstances of the offense, and the role of the actor in committing the offense, including whether it was committed in an especially heinous, cruel, or depraved manner), three (the risk that the defendant will commit another offense), six (the extent of the defendant's prior criminal record and the seriousness of the offenses of which the defendant has been convicted), and nine (the need for deterring the defendant and others from violating the law). The State also moved for a discretionary extended term pursuant to N.J.S.A. 2C:44-3(a).

6

In imposing sentence, the court recited defendant's lengthy history of contacts with the criminal justice system, as reflected in the Presentence Report (PSR): two juvenile adjudications, nine indictable convictions, four disorderly persons convictions, one conditional discharge, numerous arrests and two pending indictments at the time of sentencing. The court also noted defendant's family court domestic violence history, including four temporary restraining orders, two of which were granted to Charlotte, and one final restraining order entered against him.

The court denied defendant's request for mitigating factor two and the State's request for mitigating factor one, but found aggravating factors three, six and nine applied.

The court gave aggravating factors three and six "heavy weight" and aggravating factor nine "moderate weight." The court found the aggravating factors substantially outweighed the mitigating factors and "the preponderance of the aggravating factors weigh[ed] in favor of a custodial term in toward the highest end of the second-degree range," but denied the State's motion for a discretionary extended term.

A-2213-22

Defendant was sentenced to a five-year prison term on count one and a concurrent ten-year prison term, subject to the No Early Release Act, N.J.S.A. 2C:43-7.2, on count two.

On appeal, defendant raises the following issues:

POINT I

The trial court erred by refusing defense counsel's request to charge the jury on criminal mischief as a lesser offense of attempted aggravated arson.

POINT II

The trial court erred by denying the motion for a judgment of acquittal on the attempted aggravated arson charge.

POINT III

This Court must remand for resentencing. The trial court (i) improperly weighed dismissed charges in support of aggravating factor 3, and (ii) improperly weighed family court orders in support of aggravating factor 6.

    i. [Defendant] must be resentenced because the sentencing court misapplied aggravating factor 3, improperly weighing arrests not resulting in convictions as proof of the risk of re- offense, contrary to K.S.[2]

    ii. [Defendant] must be resentenced because the sentencing court misapplied aggravating factor 6,

---

[2] State v. K.S., 220 N.J. 190 (2015).

making an unsupported finding that [defendant] had previously been convicted of multiple crimes of violence, which improperly conflated family court orders with criminal convictions.

We address defendant's contentions, along with the applicable standards of review, in turn.

## I.

We first consider defendant's challenge to the jury charges, recognizing "[a]ppropriate and proper charges to a jury are essential for a fair trial." State v. Carrero, 229 N.J. 118, 127 (2017) (quoting State v. Daniels, 224 N.J. 168, 180 (2016)). "The proper standards of review of jury instructions are well-settled:  if the party contesting the instruction fails to object to it at trial, the standard on appeal is one of plain error; if the party objects, the review is for harmless error." State v. Cooper, 256 N.J. 593, 607 (2024) (quoting Willner v. Vertical Reality, Inc., 235 N.J. 65, 80 (2018)).

"[A]n unchallenged error constitutes plain error if it was 'clearly capable of producing an unjust result.'" State v. Singh, 245 N.J. 1, 13 (2021) (quoting R. 2:10-2). To assess whether a claimed error constitutes plain error, it "must be evaluated 'in light of the overall strength of the State's case.'" Id. at 13-14 (quoting State v. Sanchez-Medina, 231 N.J. 452, 468 (2018)).

If a defendant challenges the instruction before the trial court, "[e]rroneous instructions are poor candidates for rehabilitation as harmless, and are ordinarily presumed to be reversible error." State v. McKinney, 223 N.J. 475, 495-96 (2015) (alteration in original) (quoting State v. Afanador, 151 N.J. 41, 54 (1997)).

A harmless error occurs when there is "some degree of possibility that [the error] led to an unjust result." State v. Baum, 224 N.J. 147, 159 (2016) (alteration in original) (quoting State v. Lazo, 209 N.J. 9, 26 (2012)). "The possibility must be real, one sufficient to raise a reasonable doubt as to whether [the error] led the jury to a verdict it otherwise might not have reached." Cooper, 256 N.J. at 608 (alteration in original) (quoting State v. Baum, 224 N.J. at 159).

Pursuant to N.J.S.A. 2C:1-8(e), "[t]he court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense." To satisfy the rational-basis standard, "the court must conclude not only that the offense is included in the charged offense but also that the evidence at trial presents a rational basis for the jury to acquit the defendant of the greater offense and convict him or her of the lesser." State v. Brent, 137 N.J. 107, 123 (1994). "[S]heer speculation does

not constitute a rational basis"—rather, an "adequate reason" is required. Id. at 118-19.

When a defendant requests a lesser-included offense, the rational basis test applies. Carrero, 229 N.J. at 128. The trial court is then "obligated, in view of [the] defendant's interest, to examine the record thoroughly to determine if the rational-basis standard has been satisfied." State v. Alexander, 233 N.J. 132, 142 (2018) (quoting State v. Crisantos, 102 N.J. 265, 278 (1986)).

"In deciding whether the rational-basis test has been satisfied, the trial court must view the evidence in the light most favorable to the defendant." Carrero, 229 N.J. at 128. Our Supreme Court characterized the rational-basis test for inclusion of a lesser-included-offense instruction as "a low threshold." Ibid.

A conviction for criminal mischief-damage to tangible property requires the State to prove: the "defendant damaged tangible property; . . . the tangible property belonged to another person; and . . . [the] defendant acted purposely or knowingly when he/she damaged the property." Model Jury Charge (Criminal), "Criminal Mischief - Purposeful or Knowing Damage to Tangible Property N.J.S.A. 2C:17-3(a)(1)" (rev. May 16, 2005).

A conviction for criminal mischief - tampering to endanger person or property requires the State to prove: the "defendant tampered[3] with tangible property; . . . the property tampered with was the property of another person; . . . [the] defendant acted purposely, knowingly, or recklessly when he/she tampered with the property; and . . . the person or the property . . . was endangered by [the] defendant's conduct." Model Jury Charge (Criminal), "Criminal Mischief - Tampering so as to Endanger Person or Property N.J.S.A. 2C:17-3(a)(2)" at 1.

The trial court declined to charge the jury as to criminal mischief - damage to property because Charlotte testified there was no fire, smoke or property damage. In the absence of evidence establishing any damage to the property, a rational jury could not have found defendant guilty of criminal mischief. And because grading for an attempted offense is the same as if the criminal act had been completed, N.J.S.A. 2C:5-4(a), charging the jury on attempted criminal mischief – damage to property would have been confusing because it would have

---

3 "[T]amper with means to interfere with another person's property with the purpose of causing harm or the risk of harm." Model Jury Charge (Criminal), "Criminal Mischief - Tampering so as to Endanger Person or Property N.J.S.A. 2C:17-3(a)(2)" (rev. May 16, 2005).

required the jury to speculate on the amount of pecuniary loss had defendant completed the offense of criminal mischief.[4]

The trial court also reasoned there was no evidence to support a conviction for criminal mischief - tampering because Charlotte was not the property owner, and therefore a rational jury could not have found defendant's purpose was to tamper with the property owner's property. Rather, as the court noted, even taken in the light most favorable to defendant, the evidence showed this was a domestic violence incident in which defendant's purpose was targeted at Charlotte, not the property owner. These same issues preclude a jury charge for attempted criminal mischief - tampering.

We are therefore unpersuaded the trial court's denial of defendant's request to charge criminal mischief, in either form or as an inchoate offense, was error. In addition, we note the court's instructions were consistent with the model jury charges and therefore presumptively valid. State v. Cotto, 471 N.J. Super. 489, 543 (App. Div. 2022) (quoting State v. R.B., 183 N.J. 308, 325 (2005)). Having reviewed the jury instructions in the context of the State's strong proofs, we are

---

[4] A "pecuniary loss" is defined as "a financial or monetary loss suffered by the owner of the damaged property." Model Jury Charge (Criminal), "Criminal Mischief - Purposeful or Knowing Damage to Tangible Property N.J.S.A. 2C:17-3(a)(1)" at 3.

A-2213-22

unconvinced they were incorrect, confusing or misleading, nor clearly capable of producing an unjust result.

## II.

Defendant next argues the trial court erred by denying his motion for a judgment of acquittal on the attempted aggravated arson charge because the State did not present evidence he acted with the purpose to cause Charlotte's death or seriously injure her. We review a trial court's denial of a motion for acquittal de novo. State v. Williams, 218 N.J. 576, 593-94 (2014).

Motions for acquittal are governed by Rule 3:18-1. A court examines "whether, based on the entirety of the evidence and after giving the State the benefit of all its favorable testimony and all the favorable inferences drawn from that testimony, a reasonable jury could find guilt beyond a reasonable doubt." Williams, 218 N.J. at 594 (citing State v. Reyes, 50 N.J. 454, 458-59 (1967)).

We are satisfied the State presented sufficient evidence to support the charge of attempted aggravated arson. Defendant left a voicemail telling Charlotte she "[b]etter be woke if [she] want[ed] to make it out of there." He then went to her residence and took a substantial step to purposely start a fire by dousing her bedroom window with motor oil and holding a flame to it, apparently not aware motor oil is not flammable. Giving the State the benefit

of favorable testimony and inferences drawn from the testimony, a reasonable jury can, and did, find defendant guilty beyond a reasonable doubt of attempted aggravated arson.

## III.

Lastly, we consider defendant's challenges to his sentence, which we review with a highly deferential standard. State v. Fuentes, 217 N.J. 57, 70 (2014). We "must affirm the sentence unless (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) 'the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience.'" Ibid. (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).

Once the trial court has balanced the aggravating and mitigating factors set forth in N.J.S.A. 2C:44-1(a) and (b), it "may impose a term within the permissible range for the offense." State v. Bieniek, 200 N.J. 601, 608 (2010); see also State v. Case, 220 N.J. 49, 65 (2014) (instructing that appellate courts may not substitute their judgment for that of the sentencing court, provided the "aggravating and mitigating factors are identified [and] supported by competent, credible evidence in the record").

Defendant argues the court erred in its analysis of aggravating factors three and six. With respect to aggravating factor three, defendant contends the trial court improperly weighed arrests that resulted in dismissed charges in contravention of K.S., 220 N.J. at 199. With regard to aggravating factor six, defendant argues the trial court improperly weighed family court orders to "bolster" defendant's prior criminal convictions.

In imposing a sentence, the court must "state reasons for imposing [a] sentence including . . . the factual basis supporting a finding of particular aggravating or mitigating factors affecting [the] sentence." R. 3:21-4(h); see also N.J.S.A. 2C:43-2(e) (requiring sentencing court to "state on the record the reasons for imposing the sentence . . . and the factual basis supporting its findings of particular aggravating or mitigating factors affecting [the] sentence"). A "court must qualitatively assess" the factors it finds and assign each an "appropriate weight." State v. McFarlane, 224 N.J. 458, 466 (2016) (emphasis omitted) (quoting Case, 220 N.J. at 65).

"While a sentencing judge may 'consider' the recital in a presentence report which refers to previous 'arrests' which did not result in 'convictions,' under no circumstances should the mere fact of an 'arrest' influence the imposition of sentence, since the most innocent person may be arrested." State

v. Green, 62 N.J. 547, 562 (1973), overruled on other grounds by, K.S., 220 N.J. 190. While a charge that does not result in a conviction may be considered in sentencing, "[t]he important limitation of course is that the [court] shall not infer guilt as to any underlying charge with respect to which the defendant does not admit his guilt." Id. at 571.

Prior to imposing sentence, the court recited defendant's juvenile history, prior arrests and domestic violence history, but did not impermissibly consider this information. The court explained it found aggravating factor three and gave it "heavy weight" based on defendant's previous convictions, violations of probation and prison sentences. Based on the court's explicit statement of reasons for finding this factor, we discern no basis to conclude the court impermissibly inferred guilt from the unadjudicated charges.

Defendant next argues the trial court's statement he committed "crimes of violence, crimes of domestic violence" misrepresented the record, and therefore the court must have impermissibly considered defendant's family court history in finding aggravating factor six. As reflected in the PSR and accurately recounted by the court, defendant's lengthy criminal history included CDS offenses, two separate weapons offenses and, just three years prior to the domestic violence offenses here, second-degree aggravated assault—

strangulation of a victim of domestic violence, N.J.S.A. 2C:12-1(b)(13). Thus, we are unpersuaded the court erred in stating defendant committed "crimes of violence, crimes of domestic violence." Even if this characterization of defendant's criminal record was imprecise, we are satisfied the court's finding and weighing of the aggravating and mitigating factors was supported by competent, credible evidence in the record, and the sentence imposed does not shock the judicial conscience.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-2213-22